# State of Vermont v. Dennis R. Curtis

[597 A.2d 770]

No. 87-278

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.),**
**Specially Assigned**

Opinion Filed May 17, 1991

Motion for Reargument Denied August 14, 1991

*William T. Keefe*, Addison County Deputy State's Attorney, Middlebury, for Plaintiff-Appellee.

*Charles S. Martin* and *Deborah Palmucci*, Law Clerk (On the Brief), of *Martin & Paolini*, Barre, for Defendant-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for amicus curiae Office of Attorney General.

**Allen, C.J.** Defendant appeals from a trial court order quashing a subpoena duces tecum that would have compelled a Department of Social and Rehabilitation Services (SRS) worker to produce information from SRS files about a juvenile sexual assault victim. We reverse and remand.

Defendant was charged with the attempted sexual assault of a 12-year-old girl under 13 V.S.A. § 3252(a)(1). Following the alleged attack, the girl ran to a neighbor's home, and the police were called. The police could not locate the girl's parents, and she was placed in the temporary custody of SRS, which then consented to the child's physical examination in connection with the ensuing criminal investigation. A deposition was scheduled for the child, and a subpoena duces tecum was served on the SRS social worker assigned to the case requiring her "to bring with her all SRS files containing the name of [the child], and any documents in the possession of SRS pertaining to [the child], including drawings, tape recordings, pictures, audio/video tapes, etc." The State moved to quash the subpoena, arguing that these materials were not subject to release,[1] and the trial court, after viewing them in camera and identifying the more relevant of two files as "primarily the investigation of the alleged sexual assault which is the subject of this proceeding," concluded that the materials were protected from discovery "as confidential information under the patient privilege." The court sealed its own decision on the motion, apparently in response to V.R.Cr.P. 16.2(f). Defendant moved in the trial court under

---

[1] The State relied initially on 33 V.S.A. § 5536 (formerly 33 V.S.A. § 663), which bars public disclosure of law enforcement records of juveniles. On appeal, the State does not make this argument.

V.R.A.P. 5 for interlocutory review of the quash order, and that permission was granted.[2] The trial court certified the following question for review by this Court:

> Does the court's decision denying access of the defendant to the records of the [Department of] Social and Rehabilitation Services and to the findings and conclusions of the court deny the defendant a fair trial and violate his confrontation rights contained in the Sixth and Fourteenth Amendments to the United States Constitution and Chapter I, Article Ten of the Constitution of the State of Vermont[?]

We subsequently granted defendant's motion to allow appellate counsel to view the trial court's findings and conclusions.[3] We also requested the Attorney General to file a brief amicus curiae.

We note at the outset that the question certified by the trial court does not fully describe the issues now before us. See *State v. Dreibelbis*, 147 Vt. 98, 99–100, 511 A.2d 307, 308 (1986) (trial court's statement of the question under V.R.A.P. 5(b) is a landmark, not a boundary). The certified question raises issues under the Vermont and United States Constitutions without first asking whether the trial court correctly concluded that the SRS records were privileged and therefore protected from discovery. Under longstanding practice and precedent, we must not consider constitutional questions unless the disposition of the case requires it. *In re Wildlife Wonderland, Inc.*, 133 Vt. 507, 520, 346 A.2d 645, 653 (1975). Statutory claims are to be considered first, and if dispositive, we will not need to reach the constitutional issues. *Goodemote v. Scripture*, 140 Vt. 525, 528, 440 A.2d 150, 152 (1981).

The burden is on the State in this case to prove that the material sought to be protected is in fact privileged. *State v.*

---

[2] We do not generally grant interlocutory review of questions concerning pretrial discovery. *Castle v. Sherburne Corp.*, 141 Vt. 157, 164, 446 A.2d 350, 353 (1982). Nor does the trial court's grant of permission to appeal necessarily imply a different policy, as this Court may dismiss such appeals under V.R.A.P. 5(b)(3). In the present case the need to clarify the law and procedure in this difficult area persuades us to leave the trial court's grant of interlocutory review undisturbed.

[3] We have already ordered release of the trial court's findings and conclusions, and the issue of their release is no longer before us.

*Sweet,* 142 Vt. 238, 239, 453 A.2d 1131, 1132 (1982). The State's briefs give scant support to the trial court's conclusion that the SRS records in this case were protected from discovery by the patient's privilege. The general rule of this privilege is stated in V.R.E. 503(b):

> A patient has a privilege to refuse to disclose and to prevent any other person . . . from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental, dental, or emotional condition . . . among himself, his physician, dentist, nurse, or mental health professional . . . .

See also 12 V.S.A. § 1612(a). The definition of "mental health professional" includes "a physician, psychologist, social worker, or nurse with professional training, experience and demonstrated competence in the treatment of mental illness." V.R.E. 503(a)(5); see also 18 V.S.A. § 7101(13).

The Vermont Legislature has not created a social worker privilege. Cf. *Commonwealth v. Collett,* 387 Mass. 424, 439 N.E.2d 1223 (1982) (interpreting statute expressly conferring privilege to communications made to social workers acting in their professional capacity). See generally 8 J. Wigmore, Wigmore on Evidence § 2286, at 160 n.27 (J. McNaughton rev. ed. Supp. 1991) (compiling jurisdictions which have a statutory social worker privilege); Annotation, *Communications to Social Worker as Privileged,* 50 A.L.R.3d 563 (1973). Communications to a social worker are privileged only if they come within the patient's privilege. For the privilege to exist the social worker must, as a threshold matter, be qualified as a mental health professional, or be reasonably believed by the patient to be so. V.R.E. 503(a)(5). Further, the communications must be made for the purpose of diagnosis or treatment by a mental health professional. If the social worker is not acting in the capacity of a mental health professional, communications to her cannot, by definition, be for this purpose. It is not enough that the social worker be acting in the capacity of a social worker, as this would effectively create a social worker privilege. Until such time as the Legislature provides for a social worker privilege, this Court is not free to interpret the patient's privilege as creating one. .

■ Here, the trial court summarily concluded that "[t]he authors of the subject material are clearly mental health professionals as that term is defined." Yet the court's decision contains no findings on the authors' "professional training, experience and demonstrated competence in the treatment of mental illness." V.R.E. 503(a)(5). We reiterate that a social worker privilege does not exist in Vermont. A higher degree of qualification is required and must be shown. Further, there is no evidence in this case that the authors of the subject material were reasonably believed by the patient to be mental health professionals.

■ The more difficult issue in this case lies in discerning when communications to an SRS caseworker are made for the purpose of diagnosis or treatment by a mental health professional. When an SRS caseworker is performing an investigative function, communications made to that caseworker are not for the purpose of diagnosis or treatment by a mental health professional within the meaning of the patient's privilege. Rather, those communications are made for the purpose of investigation, so as to enable the state to take appropriate protective measures. Such communications do not fall within the patient's privilege. Cf. *In re Pitts*, 44 Ill. App. 3d 46, 48–49, 357 N.E.2d 872, 874 (1976) (social worker privilege did not apply to social workers engaged in investigation of cases of possible child abuse because it would impermissibly interfere with the reporting of an investigation's results). It is only when an SRS caseworker ceases to perform an investigative function that the patient's privilege may attach.[4]

---

[4] The nature of the information gathered is not alone determinative of whether the privilege attaches. The court found that the SRS caseworker was "gathering the information that was needed to unify and maintain this family." Yet the fact that the information gathered is necessary for diagnosis or treatment does not make communication of it for the purpose of diagnosis or treatment. For instance, a child's recounting of reported abuse or neglect to an SRS caseworker investigating that report would contain information necessary for the diagnosis or treatment of the child. Yet the nature of this information would not change the fact that the SRS caseworker was acting as an investigator. Such communications would be for the purpose of investigation, not for the purpose of diagnosis or treatment. See 12 V.S.A. § 1612(a) (for patient's privilege to attach, the information ac-

Here the trial court described the file central to this appeal as "primarily an investigation of the alleged sexual assault which is the subject of this proceeding." Yet the court held that whole file was protected by the patient's privilege. This determination must be reconsidered in light of the principles we have announced today.

■ On appeal the State asserts that even if the material fell outside the patient's privilege, the order to quash was correct under 33 V.S.A. § 111(a) (formerly 33 V.S.A. § 2551(a)) and § 306 (formerly 33 V.S.A. § 2596), also cited by the trial court. But our opinion issued today in the consolidated cases of *In re F.E.F.* and *State v. Cameron*, 156 Vt. 503, 514, 594 A.2d 897, 904–05 (1991), makes clear that the confidentiality provisions of §§ 111(a) and 306 do not create evidentiary privileges.[5]

■ Because the court decided that all of the materials were protected from discovery under the patient's privilege, its review necessarily omitted any analysis of which materials might come within the scope of V.R.Cr.P. 16. Consequently, the court on remand, in addition to reexamining its privilege determination, must also review the materials under the criteria set forth in Rule 16. In *F.E.F.* and *Cameron* the requests were quite specific, asking the State to provide SRS investigation files "as to this matter" (*F.E.F*) and for SRS records and reports "concerning the alleged sexual abuse" of the victim (*Cameron*). We noted:

> Thus, we are dealing with documents that clearly come within the scope of discovery as defined in V.R.Cr.P. 16(a)(2)(C), (D), and (G). In fact, it does not appear that the State has argued that the requested documents are outside the normal scope of discovery for a criminal or juvenile delinquency case.

---

quired must not only be necessary to enable the mental health professional to act in a professional capacity, but it must also be acquired while the mental health professional is attending the patient in a professional capacity).

[5] We also held that no evidentiary privilege exists under 33 V.S.A. § 4916(d), limiting disclosure of records in the SRS commissioner's registry of child abuse and neglect investigations. That provision has not been asserted in the present case.

156 Vt. at 509, 594 A.2d at 902. The subpoena duces tecum in the case before us required the SRS worker "to bring with her all SRS files containing the name of [the child], and any documents in the possession of SRS pertaining to [the child], including drawings, tape recordings, pictures, audio/visual tapes, etc." This request is considerably broader than that in either *F.E.F.* or *Cameron*. Whether or not this request comes within the scope of Rule 16 will be a question for the trial court in the first instance. We simply note here that our holding in those cases presumed that the requirements of V.R.Cr.P. 16 had been met, and the decision should not be read as blanket permission for a party in discovery to roam through SRS files, which, if not within the reach of discovery, are under a clear statutory mantle of protection from disclosure.

Additional issues posed in the certified question might arise again when the trial court completes its in camera review and issues its order, but they are still theoretical and premature in this interlocutory appeal, and we need not address them now.

*The order quashing defendant's subpoena duces tecum is vacated, and the matter remanded for further proceedings consistent with this opinion.*