2005 VT 102

## State of Vermont v. Edgar Whitney

[885 A.2d 1200]

No. 04-293

Present: **Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed August 19, 2005

*Joel Page*, Lamoille County State's Attorney, Hyde Park, for Plaintiff-Appellee.

*Robert B. Hemley* and *Heather Rider Hammond* of *Gravel and Shea*, Burlington, for Intervenors-Appellees The Burlington Free Press and The Stowe Reporter.

*Matthew F. Valerio*, Defender General, *Henry Hinton*, Appellate Defender, and *Dominador Pascual*, Law Clerk, Montpelier, for Defendant-Appellant.

¶ 1. **Allen, C.J. (Ret.), Specially Assigned.** In this interlocutory appeal, defendant argues that the district court erred by denying his motion to seal a competency report that he claims was not formally admitted into evidence during the competency hearing. We affirm.

¶ 2. Defendant was arraigned on a charge of first-degree murder in June 2004. After learning at the arraignment that defendant had attempted suicide, the district court ordered that he undergo a competency evaluation. An evaluation was conducted, and a report was filed with the court on June 23, 2004. A competency hearing was held on July 7, 2004. At the hearing, defense counsel and the state's attorney presented the court with a written stipulation stating that defendant was competent to stand trial. The state's attorney emphasized that the stipulation was based on the competency report's findings and conclusions. The court stated that it would accept the stipulation because the report supported it. Concerned that the court may have "accepted" the report, defense counsel stated that he wanted the report to be part of the record, but he was not offering it into evidence because he did not want the press to have access to it. Defendant argued that § 6(b)(19) of the Rules for Public Access to Court Records denied public access to the competency report because the report had not been admitted into evidence. When the court reiterated that it had relied upon the report, and that the report was part of the record, defendant moved to seal the report, relying primarily on his interpretation of § 6(b)(19).

¶ 3. The court concluded that while it respected the parties' stipulation, it had a duty to make an independent evaluation of competency

based on the record, and that the record included the report, which provided an adequate factual basis for a finding of competency. The court also concluded that defendant had failed to demonstrate that releasing the report would prejudice him. On appeal, defendant argues that there is no presumptive First Amendment right of access to competency reports not admitted into evidence, and that the trial court erred by denying defendant's motion to seal the instant competency report because it had not been admitted into evidence.

¶ 4. As a preliminary matter, we reiterate that defendant's motion to seal before the trial court was based primarily, if not exclusively, on his claim that court rules did not allow public access to the competency report because the report had not been admitted into evidence at the competency hearing. Defendant only vaguely argued that releasing the report could prejudice him, and on appeal he merely repeats in a single sentence that the report is likely to prejudice him in a pending civil suit and his criminal trial.

¶ 5. The dissent disagrees with our assessment that defendant's focus in challenging release of the competency report was based almost exclusively on the public access rules, and criticizes the trial court for not approaching defendant's vague claims of prejudice with more "judicial vigor." We find no support, however, for the dissent's view that the trial court gave "short shrift" to balancing defendant's right to a fair trial against the public's right to access court records. Defendant's desire not to see some unspecified information in the report reach the public was hardly sufficient to require the court to find a substantial probability that a compelling interest of defendant's would be harmed if the public gained access to the report. At the hearings below, apart from the parties' extended debate over whether the competency report had been admitted into evidence, defendant's attorney merely noted, by way of explanation for why his client wanted the report sealed, that he had "gotten wind of the potential for a civil suit," and that he had "some concerns . . . that some of the contents of this report would prejudice" defendant. We find nothing in the record, however, specifying what those concerns were or which contents of the report might have been prejudicial to defendant if released to the public.

¶ 6. In response to defendant's vague claim of prejudice, the trial court balanced the limited information presented to it and concluded that defendant would not be harmed if the public gained access to the report. The court stated that information concerning defendant's medical background in the report was not particularly distressing in

nature, and expressed doubt that defendant's right to a fair trial would be affected by the release of any information in the report. See *State v. Tallman*, 148 Vt. 465, 474, 537 A.2d 422, 427 (1987) ("[I]n the overwhelming majority of criminal trials, pretrial publicity presents few unmanageable threats to the accused's right to a fair trial." (internal quotations omitted)). The court later noted that the report contained nothing that had not already been in the newspaper, to which defense counsel responded only that there was also the matter of a potential civil lawsuit. In short, notwithstanding the dissent's claims to the contrary, defendant had every opportunity to demonstrate prejudice, but failed to do so.

¶ 7. On appeal, defendant summarily contends that release of the report is likely to prejudice him, without any further explanation. Because defendant has failed to challenge the trial court's finding that releasing the report would not prejudice him, and because we conclude that the competency report in this case was available to the public under our Rules for Public Access to Court Records, we need not consider defendant's claim that there is no constitutional presumptive right to access competency reports. See *State v. Curtis*, 157 Vt. 275, 277, 597 A.2d 770, 772 (1991) ("Under longstanding practice and precedent, we must not consider constitutional questions unless the disposition of the case requires it."). As we stated in *In re Sealed Documents*, 172 Vt. 152, 156, 772 A.2d 518, 523 (2001), in which we declined to resolve whether the First Amendment required public access to certain court records, "[o]ur tradition of addressing issues of constitutional significance only when the matter is squarely and necessarily presented counsels restraint and forebearance as to the broader questions of access on these alternative grounds." The dissent faults the trial court for failing to fulfill its duty to determine whether providing public access to the competency report would impair defendant's constitutional rights, but defendant failed to adequately present any claim of prejudice, and, to the extent that he did, the trial court rejected such a claim.

¶ 8. In sum, defendant's motion to seal the competency report was made to keep the whole report out of the public domain based on defendant's interpretation of § 6(b)(19) of the Rules for Public Access to Court Records. This was an ineffective and inappropriate use of a motion to seal. Under § 7(a) of the rules, the purpose of such a motion is to "seal from public access a record to which the public otherwise has access" or to "redact information from a record to which the public has access." The motion can be granted on a finding of case-specific

"good cause" and "exceptional circumstances." Defendant never seriously tried to demonstrate "good cause" or "exceptional circumstances." The dissent makes some good points about factors defendant might have cited in arguing good cause and exceptional circumstances in support of redaction of parts of the report. Unfortunately, defendant did not cite these factors. Nor, as noted, did defendant develop his argument that prejudice would result from disclosure of the report and he would be adversely affected in a civil suit. Thus, at most, defendant sought a declaration that the record was excluded from public access by § 6(b)(19), a claim properly denied, as discussed below.

¶ 9. We now turn to the Rules for Public Access to Court Records. The purpose of these rules is to "provide a comprehensive policy on public access to Judicial Branch records." Rules for Public Access to Court Records § 1. The general policy established by those rules is that "all case and administrative records of the Judicial Branch shall be open to any member of the public for inspection or to obtain copies." *Id.* § 4. Therefore, "all case records" are open to the public unless they fall into the exceptions set forth in § 6(b). *Id.* § 6(a). The only applicable exception in this case is § 6(b)(19), which provides that the public shall not have access to "evaluation[s] by a mental health professional to determine the competency to stand trial and/or sanity of a criminal defendant, if not admitted into evidence." In other words, the public is allowed access to competency evaluations that are admitted into evidence.

¶ 10. Defendant argues that § 6(b)(19) precludes public access to the instant competency report because neither defense counsel nor the state's attorney offered the report into evidence, and the trial court never formally admitted the report into evidence. We find defendant's technical argument unconvincing. By statute, when the court orders a competency evaluation, the psychiatrist preparing the report must send the resulting report to the court that ordered the evaluation. 13 V.S.A. § 4816(b). Moreover, "[t]he relevant portion" of the report "shall be admitted into evidence as an exhibit on the issue of the person's mental competency to stand trial and the opinion therein shall be conclusive on the issue if agreed to by the parties and *if found by the court to be relevant and probative on the issue.*" *Id.* § 4816(d) (emphasis added). In this case, the court ordered a competency evaluation pursuant to 13 V.S.A. § 4814(a), and the psychiatrist sent the resulting report to the court. The court then held a hearing on defendant's competency. At the hearing, the parties presented the court with a written stipulation as to defendant's competency based on the findings

and conclusions in the competency report. The court accepted the parties' stipulation because the report supported it, stating that the report was the factual basis for its finding of competency. In doing so, the court acknowledged the parties' stipulation, but emphasized that it had a duty to make an independent judgment based on the record, which in this case was the competency report.

¶ 11. Under these circumstances, the report was available to the public. State law required the competency report to be admitted into evidence, and the court, for all practical purposes, admitted the report into evidence, relying upon the report's findings and conclusions in determining that it would accept the parties' stipulation of defendant's competency. Therefore, the competency report is not covered by § 6(b)(19) and is accessible to the public under § 6(a).

¶ 12. The dissent would reverse the trial court's order and remand the matter based on the court's failure to reconcile § 6(b)(19) with § 4816(d). Specifically, the dissent contends that the trial court failed to exercise its discretion to admit into evidence only "the relevant portion" of the competency report, as required under § 4816(d). According to the dissent, the only relevant portion of the competency report would have been the psychiatrist's conclusions as to defendant's ability to stand trial. We decline to follow this reasoning. First, defendant has not raised this argument on appeal, and did not do so below. Indeed, defendant argued only that § 6(b)(19) precluded public access to the report in its entirety, and did not ask the court to prevent access to specified portions of the report. Second, the trial court had no evidence before it other than the parties' stipulation and the report. The court stated that the report — and the report alone — contained the factual basis for its finding of competency. Considering the court's duty to make an independent assessment of whether defendant was competent, we cannot assume that, under these circumstances, the court needed to rely only on the psychiatrist's conclusions concerning defendant's ability to stand trial, without considering the factual bases underlying those conclusions. Taken to its logical conclusion, the dissent's proposal would mean that, even when a competency report is admitted into evidence, the only part of the report that is ever available to the public is the psychiatrist's conclusions. That is not the law.

*Affirmed.*

¶ 13. **Skoglund, J.,** dissenting. Because of the rank invasion into the privacy of the accused for no apparent good reason, I respectfully suggest the issue presented in this case deserves greater scrutiny by

the Court and a more careful assessment of the competing interests. The accused's mental health is not at issue in this case. He has been found competent to stand trial, so the public need not fear a delay of justice caused by a term of hospitalization. There is no valid public interest that I can discern in the psychiatric evaluation report ordered by the court. I must respectfully dissent.

¶ 14. At defendant's arraignment on the charge of first-degree murder, the judge ordered a psychiatric evaluation of defendant for competence to stand trial and sanity at the time of the offense, though, as the court noted, neither the defendant nor his counsel was "enthused by the idea at all." The psychiatrist conducted the evaluation, prepared a report and sent copies of the report to the court, prosecution, and defense counsel. At the scheduled competency hearing, a public hearing attended by members of the press, the state's attorney and the defense counsel presented the judge with a signed stipulation, in which all agreed that defendant was competent to stand trial. The court noted, "we'll accept the report, and there's an adequate factual basis to support the stipulation," whereupon the defense counsel requested a bench conference. At the bench, defense counsel pointed out that defendant was not offering the report into evidence. The prosecutor argued that he wanted the report to be part of the record and that the report supported the stipulation. Defendant then moved to seal the report arguing that, pursuant to § 6(b)(19) of the Rules for Public Access to Court Records [hereinafter Access Rules], the competency report was not available to the public as it had not been introduced into evidence. The State indicated it did not take a position on whether the court should grant defendant's motion to seal the report.

¶ 15. Noting that the report contained statements "that could be viewed as terribly damaging," and anticipating that the press would want access to the report, the court recessed to allow time for counsel, on behalf of The Burlington Free Press and The Stowe Reporter, to enter and oppose the request to seal.

¶ 16. The majority states that the motion to seal was based "primarily, if not exclusively," *ante*, ¶ 4, on defendant's claim that the court rules did not allow public access to the competency report because the report had not been admitted into evidence at the competency hearing. I disagree. When the hearing resumed a few hours later, with counsel for the two news organizations appearing by telephone, defense counsel presented several reasons the report should be sealed, including the fact that the court had ordered the evaluation sua sponte,

and that the report contained information that could prejudice defendant in a potential civil suit and prejudice his right to a fair trial under the federal and state constitutions: "That's really the substance of . . . my desire to have this particular record sealed, at least at this point in time. . . . I want to make sure that Mr. Whitney's right to a fair trial is protected here."[1]

¶ 17. The court denied the motion to seal, but delayed release until defendant had an opportunity to appeal the decision to this Court. The next day, the State moved to reopen the competency hearing and properly admit the report so as to "side step this whole appeal issue" and "do it the way in hindsight we should have done it in the first place which is to follow the rule literally and have the stipulation based on admission into evidence in a formal sense of competency report." Defendant moved to reopen the arraignment so defendant could challenge the court's order for a competency evaluation, noting that had they known the report would be made available to the press, counsel would have advised defendant not to say anything. The court granted permission to appeal and stayed the release of the record until the appeal was decided. It also ruled that the competency hearing would be reopened to permit the presentation of evidence, though that did not take place.

¶ 18. The majority limits its analysis of the press's right of access to the competency evaluation solely on whether the Access Rules permit such access. It neglects to evaluate whether the court's refusal to seal the report was sustainable. I suggest it was not, because the court failed to reconcile § 6(b)(19) of the Access Rules with 13 V.S.A. § 4816 which, as explained below, limits a court's ability to incorporate a competency report into the case record. In addition, the court failed to exercise its discretion in ruling on the motion to seal, apparently believing the Access Rules controlled the question.

¶ 19. No one disputes that there is a right of access to the competency hearing itself. In *Press-Enterprise Co. v. Superior Court of California*, the United States Supreme Court determined that a qualified First Amendment right of access attaches when (1) the place and process have historically been open to the press and public, and (2) public access plays a significant, positive role in the functioning of the particular process in question. 478 U.S. 1, 8 (1986) [hereinafter *Press-Enterprise II*]. Assessing this case under the first factor, the right of

---

[1] I agree that the presentation of this argument on appeal is spare.

access would attach. In Vermont, there is a presumption that pretrial proceedings and documents are open to the public, closure being the exception rather than the rule. *State v. Tallman*, 148 Vt. 465, 474, 537 A.2d 422, 427 (1987). Similarly, in *State v. Densmore*, this Court held that a qualified First Amendment right of public access attaches to documents submitted by the parties in sentencing proceedings. 160 Vt. 131, 137, 624 A.2d 1138, 1142 (1993). The Court, noting the right was not absolute, went on to examine what interests or rights might outweigh the right to access. Acknowledging that a defendant's right to a fair trial was a compelling one, the Court agreed with intervenor newspaper publisher that the same considerations were not present at the defendant's sentencing, especially because the defendant himself had reviewed the documents at issue and chose to offer them into evidence. *Id.* at 138-40, 624 A.2d at 1143.

¶ 20. Vermont statutory law confirms this general right of access to court records, subject to recognized exceptions. *In re Sealed Documents*, 172 Vt. 152, 156, 772 A.2d 518, 523 (2001). For example, in *Tallman*, the majority held that an affidavit of probable cause becomes a public document after review by a court, relying on 4 V.S.A. § 693, and noted that, once the document had been presented in court, 1 V.S.A. § 317(b)(5) — which excludes agency records "maintained on an individual or compiled in the course of a criminal . . . investigation by . . . police" from the definition of a public record — no longer applies. 148 Vt. at 472-73, 537 A.2d at 426-27. See also *In re Sealed Documents*, 172 Vt. at 159, 772 A.2d at 525 (holding, prior to the enactment of the Access Rules, that documents upon which a court bases a decision to issue a search warrant, which are filed with the court, and which become a part of the case record, must be considered part of the "records of the court" under 4 V.S.A. § 693).

¶ 21. In addition, the Access Rules are broad. They define a "record" to include any papers "made or received pursuant to law or in connection with the transaction of any official business by the court." Access Rules § 3(a). A "judicial branch record" is defined as a "record in the possession, custody, or control of the judiciary or [one that] was in the possession of the court for purpose of a court decision." *Id.* § 3(j).

¶ 22. In the case at bar, I do not quarrel with the conclusion that the report was a "court record" pursuant to 4 V.S.A. § 693 or a "judicial branch record" under § 3(j) of the Access Rules. However, I also agree with the premise of Chief Justice Allen's concurrence in *Tallman* that "the trial court should, in fulfillment of its constitutional duty to minimize the effects of prejudicial pretrial publicity, make a prelimi-

nary determination sua sponte as to whether the contents of the affidavit could reasonably impair the defendant's Sixth Amendment rights if made public." 148 Vt. at 477, 537 A.2d at 430.

¶ 23. In this case, however restrained or inconclusive defense counsel may have been in arguing for his client's trial rights, the court should have approached the issue with more judicial vigor, whether the report had been admitted into evidence in satisfaction of § 6(b)(19) of the Access Rules or not. However, it seems the trial court decided that because the report was not shielded from access by § 6(b)(19), then it followed that the right of access to the entire report was absolute. In so doing, the court failed to consider the statutory limitations on access discussed below, and thus, its exercise of discretion cannot be sustained.

¶ 24. A court has authority to order a competency evaluation whenever the court believes that there is doubt as to the defendant's mental competency to stand trial or as to the defendant's sanity at the time of the alleged offense. 13 V.S.A. § 4814. The resultant report "shall be transmitted to the court issuing the order for examination, and copies of the report sent to the state's attorney, and to the respondent's attorney." *Id.* § 4816(b). No statement made in the course of the examination by the person examined shall be admitted as evidence in any criminal proceeding for the purpose of proving the commission of a criminal offense or for the purpose of impeaching testimony of the person examined. *Id.* § 4816(c). The purpose of this last provision is to promote objective examination by removing the danger that an accused's communications to a psychiatrist during the clinical evaluation will be used as evidence of guilt. *State v. Miner* 128 Vt. 55, 69, 258 A.2d 815, 823-24 (1969). It also reflects the protections against self-incrimination guaranteed by our federal and state constitutions. U.S. Const. Amend. V & XIV; Vt. Const. Ch. I, Art. 10; *Miner,* 128 Vt. at 71, 258 A.2d at 824.

¶ 25. Section 4816 further provides that "[t]he relevant portion of a psychiatrist's report shall be admitted into evidence as an exhibit on the issue of the person's mental competency to stand trial." 13 V.S.A. § 4816(d). Thus, it requires a court to determine what constitutes the "relevant portion" of the report, and admit only that portion into evidence. It follows that the portion of the report not deemed "relevant" need not be admitted into evidence.

¶ 26. In this case, the court made no attempt to identify the relevant portion of the report. Rather, the court found that the entire evaluation was available to the press. Given the absence of a challenge to the

determination of competency in this case, the only relevant portion would have been that containing the psychiatrist's conclusions concerning defendant's ability to understand the legal process, to appreciate the charges against him, and to assist in his defense — that is, his competency to stand trial. In particular, the details of whatever intimate, personal experiences that defendant may have shared with the psychiatrist are not relevant to his competency to stand trial. The court failed to reconcile 13 V.S.A. § 4816(d) with the Access Rules when it assumed that its conclusion that § 6(b)(19) of the rules did not preclude access to the document required the court to grant access to the entire document.

¶ 27. In essence, the court appears not to have recognized that 13 V.S.A. § 4816(d) mandates that it separate the relevant portion of the report from the nonrelevant, at which point the Access Rules only would have required it to grant access to the relevant portion. In other words, the court overlooked that it had the discretion, and the "constitutional duty[,] to minimize the effects of prejudicial pretrial publicity," *Tallman*, 148 Vt. at 477, 537 A.2d at 430 (Allen, C.J., concurring), by denying access to the portions of the report not deemed relevant to the competency determination. See Access Rules § 7(a) (authorizing court to seal records). This is evidenced by the court's statement to the press that, in light of the Access Rules, "I don't think I can . . . keep you from it." To the contrary, because § 6(b)(19) of the Access Rules excepts from public access "[a]n evaluation by a mental health professional to determine the competency to stand trial and/or sanity of a criminal defendant, *if not admitted into evidence*" (emphasis added), it would have covered any portion of the report the court did not find relevant, and thus did not admit into evidence, under 13 V.S.A. § 4816(d).

¶ 28. The court also failed to consider the historically confidential nature of the document. The reporter's notes to § 6(b)(19) state that "[n]o statute or rule restricts public access to these records. However, in practice, these evaluations have not been open to the public. This exception continues the current practice." Most importantly, the court did not actually determine whether § 6(b)(19) had been averted through admission of an evaluation into evidence. Without a finding by the court below that the document was properly in evidence, it is difficult to see how the rule governs, and yet, the court found the access rule controlled its decision. Here, the court held no hearing in response to defendant's motion to seal to determine whether the contents of the psychiatric evaluation could adversely affect his right to a fair trial, and thus did not properly balance the defendant's Sixth

Amendment right to trial by impartial jury with the public's right of access.

¶ 29. We found a similar failure to exercise judicial discretion in *In re Sealed Documents*. Holding that there was no indication that the trial courts had engaged in any balancing process to determine if the interests asserted were sufficiently compelling to outweigh the presumptive right of public access, we remanded the matter to the trial court to address the motion to seal the documents at issue. 172 Vt. at 163-64, 772 A.2d at 528. Here, in total, the court's balancing was as follows: after noting that the report contained some information about the accused's medical background, it stated that it did not

> find it particularly distressing one way or another. So I'm balancing a Sixth Amendment right to a fair trial. I don't know how he would be hurt by any additional information coming out which the State can't use anyway at trial, and . . . the devices are available to screen out any predetermined decision-making made by potential jurors who, coming from this county, I suspect already have a full report anyway.

Given the court's failure to utilize its discretion under 13 V.S.A. § 4816(d) to determine and admit into evidence the relevant portion of the report, I would remand this case.

¶ 30. Assessing this case under the second factor set forth in *Press-Enterprise II*, I cannot see how public access to the nonrelevant portion of the report would play a significant, positive role in the functioning of the court process. The cleansing effects of exposure and public accountability, prized as the byproducts of public scrutiny, seem of little consequence in the circumstances herein presented. When sanity or competency is a determinative issue in the case, the public's interest is served when it can scrutinize and understand an insanity defense or a finding of incompetency. However, in this case, the prosecution and the defense agreed with the conclusion of the evaluating psychiatrist that the defendant was competent to stand trial and so stipulated. The court, upon reading the supporting documentation, agreed.[2] Release of the entire evaluation done by a mental health professional on any defendant will certainly not promote the goal of encouraging the kind of objective examination that 13 V.S.A. § 4816

---

[2] I in no way dispute that it is ultimately the decision of the court as to whether a defendant is competent to stand trial, notwithstanding any stipulations by the parties.

intends. The danger that an accused's communications to a psychiatrist during the clinical evaluation will be used as evidence of guilt may be eliminated by § 4816; however, the danger that an accused's forthright discussion of possible mental health indicators and issues will find its way into front page reportage is not much less of a disincentive. For some, it may be more. I suggest that the Access Rules were not intended to entirely erase the statutory directive that only "relevant" information be admitted or that a court abdicate its responsibility to control access to its records.

¶ 31. This is not a civil commitment hearing as was at issue in *State v. Koch*, 169 Vt. 109, 116, 730 A.2d 577, 582 (1999), where we held that the public interest in the case of a mentally ill defendant, with serious criminal charges pending, and who had allegedly violated the conditions of the nonhospitalization order under which he was released into the community, was profound. Nor does it present the situation found in *Densmore*, 160 Vt. at 138-40, 624 A.2d at 1142-43, where we reversed the trial court's denial of access to a psychosexual evaluation of a criminal defendant submitted by the defendant to the court for consideration at sentencing. Nor is it a case where the defendant has claimed insanity as a defense or raised incompetence to stand trial as an issue. This is a case where an accused was ordered by the court to participate in an evaluation of his mental health. He was never told that his communications with the psychiatrist would become public and available to the news media. And, all agree he is competent to stand trial.

¶ 32. Acknowledging the potential for improper uses of court files such as "to gratify private spite or promote public scandal," the Supreme Court in *Nixon v. Warner Communications, Inc.* wrote that "the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).

¶ 33. The details of the accused's evaluation can serve no useful public purpose that is discernable on the record before this Court. I would reverse and remand for a hearing on the motion to seal.