NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 133

Nos. 14-284, 14-285 & 14-286

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Anthony Gotavaskas | May Term, 2015 |
| | |
| State of Vermont | |
| | |
| v. | |
| | |
| Grant S. Bercik | |

David Suntag, J.

David W. Gartenstein, Windham County Deputy State's Attorney, Brattleboro, for
  Plaintiff-Appellant.

Matthew F. Valerio, Defender General, and Joshua O'Hara, Appellate Defender, Montpelier, for
  Defendants-Appellees.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.     **EATON, J.**  The State appeals the Windham Superior Court, Criminal Division's decisions to seal certain portions of competency reports prepared in connection with court ordered competency evaluations of Anthony Gotavaskas and Grant S. Bercik, defendants in two separate criminal cases.  For the reasons stated herein, we reverse and remand.

¶ 2.     The facts of the respective underlying cases are as follows:

¶ 3.    During the summer of 2013, defendant Gotavaskas was charged with burglary of an occupied dwelling in one docket and providing false information and operation without the owner's consent in a second docket. At his arraignment on September 10, 2013, Gotavaskas raised the issue of his competency and the trial court ordered a competency evaluation pursuant to 13 V.S.A. § 4814.

¶ 4.    A competency evaluation was conducted by Dr. Paul Cotton, who issued a report dated September 24, 2013 concluding that Gotavaskas was competent to stand trial. Following the evaluation, a competency hearing was held on October 17, 2013, during which the State offered the competency evaluation into evidence, contending that the entire report should be admitted under 13 V.S.A. § 4816(e), which requires admission of the relevant portion of a competency report. Although Gotavaskas did not contest the competency finding, he objected to the admission of the entire report and offered a redacted version excluding portions he claimed were not relevant. The State disagreed, contending that because Dr. Cotton relied upon all of the information in the report as a basis for his opinion, the entire report should be admitted for its relevancy on the issue of Gotavaskas' competency.

¶ 5.    The court redacted the competency report to include only information regarding the evaluator's impressions of Gotavaskas and specific findings as to competence. The court admitted the non-redacted portions of the report and excluded the redacted ones, finding the portions it chose to redact to be "less relevant" to a finding of competency than the non-redacted portions. The State made a timely objection to the trial court's redaction.

¶ 6.    In January 2014, Gotavaskas again raised the competency issue, leading the State to seek another evaluation by Dr. Cotton. In a second report by Dr. Cotton, dated February 14, 2014, he found Gotavaskas to be incompetent.

¶ 7.    A second competency hearing was held on March 28, 2014, at which the parties stipulated to a finding of incompetency. Again the parties disagreed about what portions of the

2

report should be received into evidence; the State sought admission of the entire report, while Gotavaskas only agreed that certain portions should be admitted. The court received the report under seal but deferred ruling on the admission of the report pending its decision on what portions should be admitted, entering a finding of incompetency. After the finding of incompetence, the parties stipulated that Gotavaskas was a person in need of treatment and he was committed to the care of the Commissioner of Mental Health on an order of nonhospitalization (ONH).

¶ 8. Although the finding of incompetency had been made and ONH had issued, the court considered the arguments over the still unresolved admission of the competency reports, issuing a written decision on July 3, 2014.

¶ 9. In September 2013, defendant Bercik was charged with simple assault. He was arraigned and pled not guilty. Several months after arraignment, Bercik filed a motion for competency and sanity evaluations, which the court granted.

¶ 10. A competency evaluation was conducted by Dr. Jonathan Weker, who issued a report dated January 8, 2014 concluding that Bercik was incompetent to stand trial.

¶ 11. A competency hearing was held on February 21, 2014, at which time the State sought a finding of incompetency and the admission of the entirety of Dr. Weker's report. Although Bercik agreed that there should be a lack of competency finding, he opposed the admittance of the entire report, requesting that the court temporarily seal the report. The court made a finding of incompetency and received Dr. Weker's report under seal, deferring ruling on the admission of the report pending further briefing by the parties. Although not admitted in evidence, the court based its finding of incompetence upon the conclusions contained in Dr. Weker's report.

¶ 12. Bercik, who had previously been on an ONH, remained on an ONH following the determination of incompetency.

3

¶ 13.   On April 14, 2014 defendants Gotavaskas and Bercik moved for the court to redact their competency evaluations to include only the portions relevant to a finding of competency or incompetency, pursuant to 13 V.S.A. § 4816(e) and the Rules for Public Access to Court Records (P.A.C.R.) 6(b)(19).   By similar entry orders dated July 3, 2014, the court granted defendants' motions to redact certain portions of the competency evaluations.   In deciding to redact portions of each report, the court balanced the privacy interests of the defendants in not having "less relevant" information disclosed with the public's interest in knowing how the court reached its decisions.

¶ 14.   Section 4816(e) of Title 13 dictates that "[t]he relevant portions of a psychiatrist's report shall be admitted into evidence as an exhibit on the issue of the person's mental competency to stand trial."   13 V.S.A. § 4816(e).   The admission of material into evidence customarily carries with it public access to those records, and there is an express policy within the PACR that the public shall have access to court records unless an exception applies.   Vt. R. Pub. Acc. Ct. Rec. § 6(a) ("The public shall have access to all case records, in accordance with the provisions of this rule.").   One such exception is contained in P.A.C.R. 6(b)(19), excepting from public disclosure "[a]n evaluation by a mental health professional to determine competency to stand trial . . . if not admitted into evidence."   Id. § 6(b)(19).   Additionally, under P.A.C.R. 7(a) a court may, after a finding of good cause specific to the case before the court and exceptional circumstances, "seal from public access a record to which the public otherwise has access or may redact information from a record to which the public has access."   Id. § 7(a).

¶ 15.   Recognizing the public access that would be afforded to the defendants' private information if the competency reports were admitted in their entirety, the court's decisions, issued after the incompetency determinations had been made, limited the admission of the reports to unredacted portions.   No findings were made as to the portions excluded by the court, which made no case-specific basis for the decision to exclude them.   The court discussed the

4

P.A.C.R. and recognized the defendants' privacy interests, finding it appropriate to balance the defendants' interests with those of the public:

> Typically, the evaluator's impressions of the defendant and specific findings as to competence will be relevant enough to the determination that they cannot be redacted or sealed. However, personal history, past diagnoses, medical and substance abuse history, and observations regarding criminal responsibility, for example, may not be closely related enough to competency to require release to the public.

The court then redacted certain portions of the reports without indicating what was being redacted in these specific cases or why.

¶ 16. This Court has long recognized the public's interest in access to information upon which judicial decisions are made, an access necessary for the maintenance of public confidence in the judiciary. State v. Koch, 169 Vt. 109, 117, 730 A.2d 577, 583 (1999). This presumption of public access is deep-rooted and so strong that it applies even to pretrial criminal proceedings. State v. Tallman, 148 Vt. 465, 475, 537 A.2d 422, 428 (1989). Such a presumption is especially critical, however, at the junction of our criminal and mental health statutes, where both the mental health of the defendant and public safety concerns are to be considered. By requiring the admission of relevant portions of a competency evaluation, which are thus made available to the public through P.A.C.R. 6(b)(19) unless sealed under P.A.C.R. 7, § 4816(e) is consistent with this long-standing policy.

¶ 17. Narrowly viewed, the cases before the Court involve evidentiary rulings concerning undisputed findings of incompetency. No outside entity has raised an issue of public access. Thus, the initial issue is whether there is a justiciable controversy before this Court and, if so, whether the State has standing to raise it.

¶ 18. Although no person or member of the public sought to intervene to represent the public's right of access to the competency evaluations, this is not to say that the public did not have an interest in seeing that justice was done in the determination of these defendants'

5

competency. For the judicial system to function properly, it is essential that the basis for court rulings not be cloaked, because this prevents the public from knowing how and why decisions have been reached. In this respect, it may fall upon the prosecutor to represent the public's right of access to the decision making process, which might otherwise go unrepresented, especially in cases such as these where the media or the general public may be unaware of the competency issues. An evidentiary ruling in a competency hearing which excludes certain information contained in the competency report will have a collateral impact on the public's ability to access the documents supporting the competency ruling, and will do so without meaningful notice to the public.

¶ 19. While we ordinarily would expect members of the public to assert and advocate for their own interests in matters impacting public access, a member of the public would lack standing to intervene regarding an evidentiary ruling at a competency hearing. Because the public lacks meaningful notice and an opportunity to be heard on the evidentiary ruling, and because that ruling will impact public access to the evidentiary records, there is a public interest at stake. It is in the public interest that the public has access to information upon which competency decisions are made, as reflected in the legislative decision requiring disclosure of relevant information in the competency statute. Koch, 169 Vt. at 117, 730 A.2d at 583; Tallman, 148 Vt. at 475, 537 A.2d at 428. Because the prosecutor is involved in the competency proceeding and is the only party in a position to object to the court's ruling on behalf of the public on evidentiary matters which will collaterally impact public access, we conclude that, under the circumstances presented here, the State had standing to assert public access concerns. To hold otherwise would create a proceeding in which the only party with the meaningful ability to object would be the defendant. We can envision a similar circumstance when, in the course of a proceeding, on a motion by a party or on the court's own motion, the court invokes P.A.C.R. 7 to seal records which would otherwise be available to the public. In such a case, as distinguished

6

from a direct public records request from a member of the public, the prosecutor would again be the only one in a position to raise an objection or appeal on behalf of the public interest.

¶ 20. Although the State may have standing to address the right of public access, an actual case or controversy must still exist for these cases to properly be before this Court. Absent a case or controversy, the appeals are moot.

¶ 21. Here, the findings of incompetency were based on documents received under seal, and those documents remain under seal as a consequence of the court's order. Further, defendants have been found incompetent and therefore have yet to stand trial on the pending criminal charges. Each defendant's competency remains subject to further evaluation and consideration by the criminal division. Under these circumstances, the appeals are not moot.

¶ 22. Even if the appeals were moot, we have recognized exceptions to the case or controversy doctrine in cases that are capable of repetition yet likely to evade review, as well as in cases where negative collateral consequences, such as the stigma of mental health commitment, are likely to result from the action being reviewed. See In re P.S., 167 Vt. 63, 67, 702 A.2d 98, 101 (1997) (citing State v. Condrick, 144 Vt. 362, 363, 477 A.2d 632, 633 (1984)) (finding that negative collateral consequences can apply in mental health commitment cases because "[t]he legal disabilities radiating from the label of mentally incompetent are myriad"). We address these exceptions as an alternative, in the event the cases were, in fact, moot.

¶ 23. To fall within the mootness exception for situations capable of repetition yet evading review, a plaintiff must satisfy a two-prong test. First, "the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration." Price v. Town of Fairlee, 2011 VT 48, ¶ 24, 190 Vt. 66, 26 A.3d 26 (citing Tallman, 148 Vt. at 469, 537 A.2d at 424). Second, "there must be a reasonable expectation that the same complaining party will be subjected to the same action again." Price, 2011 VT 48, ¶ 24; Paige v. State, 2013 VT 105, ¶ 10, 195 Vt. 302, 88 A.3d 1182. Competency is a fluid concept which may exist at one time during

the prosecution of a case and not at another such that a finding of incompetency does not eliminate a future finding of competency or vice versa. See State v. Lockwood, 160 Vt. 547, 555-56, 632 A.2d 655, 660 (1993) ("Once a defendant has been found competent, the trial court must be alert to changed circumstances that would indicate the need for a new determination of competency").

¶ 24. The negative collateral consequences exception to the mootness doctrine "is limited to situations where proceeding to a decision in an otherwise dead case is 'justified by a sufficient prospect that the decision will have an impact on the parties.' " Paige, 2013 VT 105, ¶ 12 (quoting In re Collette, 2008 VT 136, ¶ 16, 185 Vt. 210, 969 A.2d 101). While the stigma attached to a finding of incompetency may be less than that which attaches to an order of involuntary commitment, it is, nonetheless, a finding which leads to further proceedings under Vermont's mental health laws.

¶ 25. In In re S.N., we declined to invoke an asserted public interest exception to the case or controversy doctrine. 2007 VT 47, ¶ 9, 181 Vt. 641, 928 A.2d 510 (mem.). In that case, S.N. had been ordered to submit to an emergency mental health examination and had requested a probable cause hearing. Id. ¶ 2. The court found no probable cause to determine him to be a person in need of treatment and had ordered him discharged from the State Hospital. Id. ¶ 4. By the time of the appeal, S.N. had been released from the State Hospital and had returned to New York. Id. We found the hypothetical possibility that S.N. would return to Vermont insufficient to invoke the public interest exception. Id. ¶ 7.

¶ 26. Unlike in S.N., defendants have been the subject of criminal charges that have not been prosecuted to conclusion due to findings of incompetency. In addition, both defendants have had further or ongoing involvement with our mental health laws through ONHs already in place prior to those criminal charges or directly resulting from the instant criminal charges, making these stronger cases for the adoption of a public interest exception than was presented in

8

S.N.  Although there is a recognized public interest here, we decline to adopt further exceptions to the mootness doctrine.

¶ 27.   In considering the two recognized exceptions, we find that the cases at hand present situations capable of evading review.  It was defendants' objections to the admission of the competency reports in their entirety which triggered the controversy leading to these appeals.  The State has objected on two separate occasions to orders which resulted in only portions of competency evaluations being admitted into evidence, despite broad statutory language dictating admission of relevant portions of the reports.  Yet despite the lack of formal admission of any portion of the competency reports, orders of non-competency issued based upon documents received under seal.  Under these circumstances, to consider these appeals moot by virtue of the incompetency rulings would leave the State with no remedy in any case where, as here, the State did not object to the ultimate conclusion as to competency, and would allow the trial court to create a process and a procedure by which its actions could not be reviewed.  Thus, we are satisfied that both prongs of the "evading review" exception to the mootness doctrine are met if we otherwise considered the issue to be moot.  Consequently, we need not address whether the "negative collateral consequences" exception might also apply in this instance.

¶ 28.   Turning to the court's rulings regarding admission of the competency reports, we start with the statutory language of 13 V.S.A. § 4816(e) in effect at the time of these orders, which read as follows:

> (e) The relevant portion of a psychiatrist's report shall be admitted into evidence as an exhibit on the issue of the person's mental competency to stand trial and the opinion therein shall be conclusive on the issue if agreed to by the parties and if found by the Court to be relevant and probative on the issue.

¶ 29.   The substance of this appeal turns on consideration of the term "relevant."   The State argues that "relevance" in § 4816 is determined by reference to V.R.E. 401, while

defendants assert that a narrower construction of "relevant" should apply given the privacy interests which pertain to assessments of this nature.

¶ 30. In State v. Whitney, 2005 VT 102, ¶ 4, 178 Vt. 435, 885 A.2d 1200, this Court held that the defendant was not entitled to have a competency report sealed where the trial court relied on it in finding the defendant to be competent, but the report was never formally offered into evidence. We found the lack of formal admission an unconvincing technical argument and further found the public had access to the report. Id. ¶ 8.

¶ 31. The language of the statute requires that the relevant portion of a competency evaluation shall be admitted into evidence. The statute does not create hierarchies of relevance or provide the trial court with discretion to exclude relevant portions of competency reports. P.A.C.R. 6(b)(19) follows the statute in that a competency evaluation is exempted from public disclosure "if not admitted into evidence." Consistent with Whitney, neither the statute nor the P.A.C.R. allow the court to rely upon a competency report in the determination of competency but not admit at least the relevant portions of the report.

¶ 32. Also consistent with Whitney, relevant portions of a competency report otherwise accessible by the public might be redacted in a case where the necessary showing of "good cause" and "exceptional circumstances" has been made on a case-specific basis under P.A.C.R. 7(a). No findings approaching that which would be necessary to redact portions of any report under P.A.C.R. 7(a) were made in either of defendants' cases.

¶ 33. While, by its language, the statute contemplates that some portions of a competency report might not be relevant, and thus not required to be admitted, it does not suggest that any other application of "relevance" should be used in considering what portions of a competency report are relevant for competency purposes other than that which is set forth in V.R.E. 401, the test for relevancy in Vermont courts. Whatever standard the trial court used

here, it did not apply a V.R.E. 401 analysis to its decision on what portions of the reports to admit and what portions to exclude. It should have done so.

¶ 34. Because the court did not apply the relevancy considerations required by V.R.E. 401, it is necessary to remand these cases so that the proper findings may be made. Consistent with 13 V.S.A. § 4816(d), relevant portions of the competency reports shall be admitted. Those portions of the reports are accessible to the public unless the necessary case-specific findings sufficient to justify redaction under P.A.C.R. 7(a) are made.

¶ 35. In so holding, we are cognizant of the concerns expressed by the dissent in Whitney concerning dissemination of sensitive material. But the balance between what is publicly accessible and what is not in terms of competency evaluations has been clearly stated in 13 V.S.A. § 4816(e) and P.A.C.R. 6(a) and 7(a)—relevant portions of competency evaluations shall be admitted and admitted portions of competency evaluations are public unless redacted. It is not for us to rule otherwise where the applicable legal framework is clear.

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____
Associate Justice

¶ 36. **SKOGLUND, J., dissenting.** "In the case of a mentally ill defendant, with serious criminal charges pending against him and who has allegedly violated the conditions of the nonhospitalization order under which he was released into the community, the public interest is profound." State v. Koch, 169 Vt. 109, 116, 730 A.2d 577, 582 (1999). I wrote that sixteen years ago in Koch and still agree with the statement. But, while there may be a valid public interest in this case, it does not trump a trial judge's careful exercise of discretion in admitting into evidence only the relevant portions of a competency evaluation. That exercise of discretion

11

is exactly what the law allows and the statute contemplates a responsible jurist will do when deciding what evidence should become a public record.

¶ 37.   In both cases before this Court, the parties stipulated to the incompetency of defendants.   Then, the court ordered briefing on the issue of admission of the competency evaluations.   The defense asked for redaction of portions of the report and the State argued the entire report was relevant and admissible.

¶ 38.   The trial court found that "not all of the information typically present in a competency report is directly related to the determinations that are the report's object."   The trial court then contrasted elements of competency reports that should not be redacted or sealed—i.e., the evaluator's impressions of the defendant and specific findings regarding competence—with elements that could be sealed because they were not related to competency, such as personal history, past diagnoses, medical and substance abuse history.   As a result, the trial court decided portions of defendants' competency evaluations were not relevant to the question being decided—that is, whether they were competent to stand trial.

¶ 39.   This appeal should be resolved by a plain reading of 13 V.S.A. § 4816(e): "The relevant portions of a psychiatrist's report shall be admitted into evidence as an exhibit on the issue of the person's mental competency to stand trial."   That sentence is not difficult to parse.

¶ 40.   By its unambiguous terms, § 4816(e) limits the admission of a psychiatrist's report to "the relevant portions."   Evidence Rule 401 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   V.R.E. 401.   Relevance is one of the core principles ensuring the reliability of fact finding conducted in judicial proceedings.   It is the central test governing admissibility of evidence.

¶ 41. We have examined relevancy as it relates to competency evaluations in several cases. In State v. Oakes, 129 Vt. 241, 276 A.2d 18 (1971), cert. denied, 404 U.S. 965 (1971), we recognized the trial court's broad discretion over admission of competency evaluations. In Oakes, the defendant challenged testimony of the examining physician that reported what defendant had said about his drinking habits. Even though the facts "did not tend to establish, in any way, the truth or falsity of the charge," the Court found no error because "these facts were essential ingredients in the full evaluation of the issue of the respondent's sanity, or lack of it." Id. at 257. Moreover, as the trial progressed, "the relevance of this testimony on that issue became even more pronounced." Id.

¶ 42. We accorded the same evidentiary discretion to the trial court in State v. Whitney, 2005 VT 102, 178 Vt. 435, 885 A.2d 1200. In Whitney, defendant was found competent to stand trial based on the stipulation of the parties. But Whitney feared release of the competency report would compromise his ability to get a fair trial. His motion to seal the report was denied by the trial court and he appealed. Beyond deciding that Whitney's arguments failed to demonstrate prejudice, this Court held his motion was "based primarily, if not exclusively, on his claim that the court rules did not allow public access to the competency report because the report had not been admitted into evidence." Id. ¶ 4. See also P.A.C.R. 6(b)(19) (denying public access to "evaluation[s] by a mental health professional to determine the competency to stand trial and/or sanity of a criminal defendant, if not admitted into evidence"). This Court found Whitney's argument to be merely technical and, relying on 13 V.S.A. § 4816(d),[1] stated:

> 'The relevant portion' of the report shall be admitted into evidence
> as an exhibit on the issue of the person's mental competency to
> stand trial and the opinion therein shall be conclusive on the issue

---

[1] The language contained in the former 13 V.S.A. § 4816(d) is the same language contained in the current 13 V.S.A. 4816(e); the statute was amended in 2010. See 2009, No. 146 (Adj. Sess.), § C25a.

> if agreed to by the parties and <u>if found by the court to be relevant and probative on the issue</u>.

<u>Id</u>. ¶ 10 (emphasis in original). The majority affirmed the trial court's decision.

¶ 43. Because Whitney was found competent, I argued in dissent that the only relevant part of the report would have been that containing the psychiatrist's conclusions concerning the defendant's ability to understand the legal process, to appreciate the charges against him and to assist in his defense—that is, his competency to stand trial. <u>Id</u>. ¶ 26. Still, I appreciate the Whitney majority's implicit deference afforded to the trial court's evidentiary decision.[2] I fail to see why that deference is not afforded in this case.

¶ 44. A common thread ties our cases discussing relevancy and competency reports together: the deference afforded the trial court. Indeed, in all cases involving evidentiary decisions "[t]rial courts have great latitude in deciding whether to admit or exclude evidence, and such decisions will not be reversed absent an abuse of discretion resulting in prejudice." <u>Little</u>, 167 Vt. at 579, 705 A.2d at 180. The deference afforded to trial court is reflected in our standard of review for evidentiary decisions: abuse of discretion. <u>State v. Lumumba</u>, 2014 VT 85, ¶ 3, 197 Vt. 315, 104 A.3d 627 (quoting <u>Desautels</u>, 2006 VT 84, ¶ 12 ("On review, we generally accord deference to the court's decision to admit or deny evidence, and will reverse the trial

---

[2] Although the <u>Whitney</u> majority made clear that the right to access trumped the defendant's technical arguments regarding admission of the reports, <u>Whitney</u>, 2005 VT 102, ¶ 10, the majority did not indicate whether Evidence Rule 401 or Evidence Rule 403 was the more appropriate vehicle to consider relevance under 13 V.S.A. § 4816(d). Given the <u>Whitney</u> majority's focus on the defendant's inability to demonstrate prejudice, <u>id</u>. ¶ 4, I assume Evidence Rule 403. See Reporter's Notes, V.R.E. 403 (allowing a trial court to exercise its discretion "to exclude evidence that is technically relevant if its probative value is outweighed by dangers of prejudice"). Consideration under Evidence Rule 403 may be more appropriate because the rule allows a trial court to balance the "liberalized provisions in the area[] of competence" with possible prejudice to the defendant in the form of public disclosure. <u>Id</u>. In this case, on the other hand, the majority asks the trial court to make findings based on Rule 401. See <u>ante</u>, ¶ 33. I understand that in practice, however, analysis under Evidence Rule 401 and Evidence Rule 403 blends together. My point is that, regardless of the evidence rule used, the trial court's evidentiary decision must be afforded substantial deference. See <u>State v. Desautels</u>, 2006 VT 84, ¶ 12, 180 Vt. 189, 908 A.2d 463; <u>State v. Little</u>, 167 Vt. 577, 579, 705 A.2d 177, 180 (1997)(mem.).

14

court's ruling 'only when there has been an abuse of discretion that resulted in prejudice.' "). Moreover, the party who objects to the evidentiary decision must demonstrate that they suffered prejudice to overcome the deferential presumption. Id. Discretion is abused when a court "either totally withholds or exercises its discretion on clearly untenable or unreasonable grounds." State v. Russell, 2011 VT 36, ¶ 9, 189 Vt. 632, 22 A.3d 455 (mem.). I analyze the trial court's decision with that standard in mind.

¶ 45.   What is the "action" should be the first consideration when evaluating the relevance of evidence. V.R.E. 401; see McCormick, Evidence § 185, 541 (3d ed. 1984). Here, the matter under consideration is whether the defendants were competent to stand trial. Nothing more. "In order for evidence to be relevant [,] . . . it must tend to support the proposition for which it was offered." State v. Dragon, 130 Vt. 334, 341, 292 A.2d 826, 831 (1972).

¶ 46.   An examination to determine a defendant's competency focuses on only two issues, the mental competency of the person examined to stand trial for the alleged offense and the sanity of the person examined at the time of the alleged offense. 13 V.S.A. § 4816(a). In both cases before us, the examination was solely to determine competency. Regarding competency to stand trial, the evaluating psychiatrists described the standard as follows: "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." Thus, the relevant portion of an examination would be that containing the psychiatrist's conclusions concerning defendant's ability to understand the legal process, to appreciate the charges against him, and to assist in his defense—that is, his competency to stand trial.

¶ 47.   The court ruled that "not all of the information typically present in a competency report is directly related to the determinations that are the report's object." In balancing the interests at play—limited public access under P.A.C.R. 6(b)(19) and open access under

15

Whitney—the court found it appropriate to redact the report. The court found that the sections of the competency reports detailing some medical records, data pertaining to competency, legal history, competency assessment, mental status exam, and the ultimate conclusion—competence to stand trial—were relevant. The court then accepted the stipulation of incompetency based on these "relevant portions" in compliance with 13 V.S.A. § 4816(e). This evidentiary decision is a trial court's bailiwick and should not be overturned unless untenable. Russell, 2011 VT 36, ¶ 9 (stating that discretion is abused when a court "exercises its discretion on clearly untenable or unreasonable grounds."). Moreover, the range of private information present in a competency evaluation suggests that we should encourage trial judges to undertake this very analysis.

¶ 48. A Ninth Circuit case, U.S. v. Guerrero, 693 F.3d 990 (9th Cir. 2012), illustrates the scope of information contained in a competency evaluation. Guerrero was indicted for first-degree murder, first-degree murder of a United States correctional officer, and murder by a federal prisoner serving a life sentence. The government sought the death penalty. A competency evaluation and a Neuropsychological Evaluation report were prepared by the defense and the Bureau of Prisons forensic psychologist submitted a forensic evaluation of Guerrero's competence to stand trial. Guerrero filed an interlocutory appeal of the district court's order denying his motion to seal his pretrial competency proceedings and related filings. On appeal, the court found it lacked jurisdiction but evaluated the issues thoroughly.

¶ 49. Guerrero argued that his right to privacy outweighed any public right of access. He noted that the evaluation reports describe his mental illnesses and cognitive defects, his academic record as a child, his social history, physical and sexual abuse he experienced and the names of his minor daughter and other relatives. Focusing on the competency evaluation and Guerrero's right to privacy, the district court stated that to the extent that Guerrero's privacy rights were cognizable, they were largely surrendered by the fact that he had placed his competency at issue.

16

¶ 50.   The Ninth Circuit rejected that analysis. "We do not agree with the district court that a defendant surrenders his right to privacy because he may not be constitutionally fit to stand trial." Id. at 1003.   Instead, the Ninth Circuit indicated that courts may give weight to the privacy interests of defendants when considering access to judicial proceedings, and noted that these interests can be protected by alternatives to full disclosure, such as protective orders and redaction. Id. at 1003.

¶ 51.   A decision by the court that a person accused of a crime is not competent to be tried is, of course, in the public's sphere of interest. See Koch, 169 Vt. at 116, 730 A.2d at 582. However, I posit that the public does not have a legitimate interest in an incompetent defendant's early childhood education, his family's medical and psychological history, and any history of abuse or neglect.   Nor would such information tend to show a defendant's competency is more or less probable than it would be without the evidence.   And, I stress that everything the public finds interesting is not necessarily in the public interest, as that concept is understood in the legal community.

¶ 52.   Basically this appeal is simple.   The State disagrees with the trial court's evidentiary ruling on relevance.   But, the State has not demonstrated that the trial court's decision to redact portions of the competency reports prejudiced it in any sense. See Desautels, 2006 VT 84, ¶ 12 (requiring an abuse of discretion resulting in prejudice).   I fail to see how protecting a defendant's early childhood education, his family's medical and psychological history, and any history of abuse or neglect can be prejudicial to the State.

¶ 53.   The State argues that the integrity of the judicial process depends in large part on public scrutiny.   Agreed.   But, all documents considered by a court in making significant judicial decisions are not provided to the public.   Surely the public is interested in criminal sentencing, and rightly so.   However, they are forbidden access to Pre-Sentence Investigation reports. V.R.Cr.P. 32(c)(1).

¶ 54.    At times, sensitive information must be carefully handled.  To this end, the Rules of Access specifically exclude certain records: those pertaining to adoption proceedings, V.P.A.C.R. 6(b)(1), sterilization proceedings, P.A.C.R. 6(b)(2), grand juries, V.P.A.C.R. 6(b)(3), analysis of DNA of a person, V.P.A.C.R. 6(b)(8), and records of the court in mental health and mental retardation proceedings under part 8 of Title 18, "unless failure to make disclosure would be contrary to the public interest."  V.P.A.C.R. 6(b)(5).  In fact, thirty-four specific records are denied the public under the rules.  See generally V.P.A.C.R. 6.

¶ 55.    Further, 7(a) of the Rules of Access specifically endorses redaction as an appropriate tool for the courts when a record is accessible to the public.  V.P.A.C.R. 7(a).  Our general statutory scheme indicates that the integrity of the judicial system depends not only on promoting public access, but also on protecting sensitive information.  Although "inquiring minds" may "want to know," the court does not publish the National Enquirer.

¶ 56.    Unlike the situation presented in State v. Koch, the issue is not the right of access to a hearing on hospitalization or the sealing of an ONH.  See generally Koch, 169 Vt. at 117, 730 A.2d at 583.  This appeal simply concerns an evidentiary decision by the trial court.  While the majority wants more findings, I find sufficient information in the court's balanced approach to satisfy myself that there was no abuse of discretion.

¶ 57.    I respectfully dissent.

_____
Associate Justice

18