### State of Vermont v. Frederick K. Koch

[730 A.2d 577]

No. 97-261

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed March 5, 1999

*Robert B. Hemley* and *Dennis R. Pearson* of *Gravel and Shea,* Burlington, for Intervenors-Appellants.

*David A. Gibson,* Brattleboro, for Defendant-Appellee.

**Skoglund, J.** Two newspaper publishers and their reporters, intervenors in the above entitled criminal proceedings, appeal the district court's decision closing two hearings concerning a motion to revoke defendant Koch's order of nonhospitalization and the court's decision sealing the nonhospitalization order that resulted from those hearings. Intervenors allege that the district court violated their

qualified First Amendment right of access by erroneously requiring closure of the hearing upon defendant's request and by giving 18 V.S.A. § 7103 an overly broad construction, incompatible with the presumptive public nature of court documents, when it sealed the nonhospitalization order. Without reaching the qualified, constitutional right-of-access issue, we reverse both the trial court's decision to close the revocation hearing and to seal the nonhospitalization order.

The parties do not dispute the relevant facts. Defendant Koch was arraigned in March 1997 on two misdemeanor counts of disorderly conduct. The district court ordered a forensic evaluation of defendant at the state hospital in Waterbury to determine his competence to stand trial and his sanity at the time of the offense. See 13 V.S.A. §§ 4814, 4815. After the competency hearing, the parties stipulated that defendant was competent. Nonetheless, based on the report of the examining psychiatrist that defendant had likely been insane at the time of the events charged by the information, the court ordered defendant's continued confinement at the state hospital pending a hospitalization hearing. See 13 V.S.A. § 4820(1).

The court conducted the hospitalization hearing on April 22, 1997, pursuant to 13 V.S.A. §§ 4821 and 4822. Defendant did not request a closed hearing; it was conducted in open court and covered by representatives of the news media. At the conclusion of the hearing, the court made oral findings on the record determining that defendant was in need of treatment as set out in 18 V.S.A. § 7101 but deciding that defendant could receive treatment outside a hospital setting. See 18 V.S.A. § 7617. The court subsequently issued a written order of nonhospitalization.

On May 14, 1997, the State and the Commissioner of Mental Health joined in a motion requesting the court to revoke its order of nonhospitalization and subject defendant to hospitalization. Petitioners based their request on defendant's alleged admission that he struck a pedestrian with his car on May 9, 1997, in Stowe, Vermont, but could not explain how the accident occurred. The pedestrian died three days later from injuries sustained in the accident.[1] The motion for revocation alleged that the program of nonhospitalization treatment as outlined in the court's order of April 22, 1997, had become

---

[1]Defendant was subsequently charged with a felony, gross negligent operation of a motor vehicle, death resulting, and formally arraigned on that charge in Lamoille District Court on September 22, 1997.

inadequate to meet defendant's need for treatment and that "[s]pecifically, Mr. Koch presents a danger to other persons which is incompatible with his continued presence outside a hospitalized setting."

At the May 16, 1997, hearing on the motion to revoke the order of nonhospitalization, defendant requested that the court close the hearing to the public. The court received written requests from reporters for The Brattleboro Reformer and The Rutland Herald to attend the proceedings. The court, relying on 18 V.S.A. § 7615(e), ordered the hearing closed, and stated its position that under the statute "the proposed patient [has] an absolute election to have proceedings with respect to mental health commitments conducted in private." On May 29, 1997, the State and defendant filed a stipulation (later referred to by the court as a "consent decree") in support of defendant's release from the state hospital and entry of a new order of nonhospitalization.[2]

On June 2, 1997, the court held a hearing to consider the parties' consent decree. Again, this hearing was closed to the public. The same day, the court issued an order pursuant to 18 V.S.A. § 7103(a) adopting the parties' proposed consent decree. The order required that the full contents of the consent decree, including the terms and conditions of nonhospitalization and methods of enforcement, remain under seal.

Also on June 2, the court issued a written order in which it reconsidered the closure of the revocation hearings but ultimately denied the appellants' motion seeking access to the hearings and nonhospitalization order. The court reasoned that "the proceedings are cloaked in a general presumption of confidentiality." Notwithstanding its holding that hearings were closed absent a waiver of confidentiality by the proposed patient, the court went on to analyze whether the public and press had a qualified First Amendment right of access under the test set forth in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*). In its analysis, the court compared involuntary commitment proceedings to juvenile proceedings and opined that the court's exclusive concern in both was the welfare of the proposed patient. Further, it read narrowly the discretion afforded the court to "exclude all persons not necessary for

---

[2] As part of the stipulation, the defendant waived any contest as to jurisdiction and the State dismissed independent hospitalization proceedings initiated after the May 9 fatal accident in Stowe.

the conduct of the hearing" found in § 7615(e). Based on its conclusions that the public and press were not "necessary" for the hearing, that in most cases their presence would likely undermine the goals of the mental health statute, and that hospitalization hearings were traditionally closed to the public, the court held that the public did not have a qualified right of access to the June 2, 1997, proceedings. Intervenors' appeal followed.

Intervenors raise both constitutional and statutory arguments in support of their claim that the press should have access to hospitalization hearings and resultant orders when such hearings have been initiated as part of a criminal proceeding. Since we reverse on statutory grounds, we do not specifically address the court's application of the two-part test for determining whether a qualified First Amendment right of access attaches to a particular criminal proceeding. See *State v. LaBounty*, 167 Vt. 25, 29-30, 702 A.2d 82, 85 (1997) (citing *Press-Enterprise Co. v. Superior Court, supra,* regarding test under which qualified right attaches if place and process have historically been open to press and general public, and if public access plays significant, positive role in functioning of particular process in question). This appeal therefore does not require us to decide if there is a qualified constitutional right for the public and the press to attend such hearings.

■ The statutory issues on appeal concern questions of law: (1) whether, pursuant to 18 V.S.A. §§ 7615(e) and 7103(a), a district court must close involuntary commitment hearings absent a waiver of confidentiality by defendant; and (2) whether 18 V.S.A. § 7103(a) creates a statutory presumption that nonhospitalization orders remain confidential. Thus, our "review is nondeferential and plenary." *Godino v. Cleanthes*, 163 Vt. 237, 239, 656 A.2d 991, 993 (1995). We address the issues in turn.

I.

Intervenors maintain that the court improperly construed the relevant statutes to give rise to a presumption of confidentiality, rather than a presumption of public access. Specifically, intervenors argue that the court erroneously relied on §§ 7615(e) and 7103(a) of Title 18 to close the hospitalization hearings and to seal the full and complete order of nonhospitalization. In the alternative they contend that, even if § 7103(a) is applicable to involuntary treatment hearings, the court here could have accommodated all interests by

conducting the hearings in such a manner that it would not have required the wholesale disclosure of any clinical information in defendant's medical records. Intervenors maintain that they were wrongfully deprived of the court's reasoning and rationale for its actions regarding defendant's mental health status, even if they had no right to view the specific contents of psychiatric reports.

Defendant claims that 18 V.S.A. § 7615(e), authorizing exclusion of all unnecessary persons from hospitalization hearings, supports the argument for closed hearings. In addition, defendant argues that the issues addressed in a hospitalization hearing must be kept confidential under 18 V.S.A. § 7103(a), which prohibits the commissioner and other employees of the Department of Developmental and Mental Health Services from releasing documents or information unless one of the three statutory exceptions of § 7103(a) applies.

The court found a presumption in § 7615 that is not there. Section 7615, which permits the proposed patient to attend the hearing "at his election" and which permits the court to "exclude all persons not necessary for the conduct of the hearing," indicates the discretion afforded the court; it is not a signal that the hearings are presumptively confidential. Even evaluating § 7615 in light of the confidentiality afforded "certificates, applications, records and reports" that identify persons subjected to civil commitment under § 7103 of Title 18 does not result in such a presumption. Section 7103 was enacted pursuant to the Mental Health Act of 1968, as part of the legislative policy of deinstitutionalization that began in 1963 with the creation of a Department of Mental Health. See 1967, No. 305 (Adj. Sess.). The Mental Health Act marked the first effort to acknowledge the stigma attached to the label of mental illness, as seen in the confidentiality provisions found in § 7103. Nonetheless, § 7103's attempt to protect sensitive medical information, coupled with the ability of the judge to exclude persons from the hearing room pursuant to § 7615, does not equate to a legislative pronouncement that commitment hearings are confidential and closed to the public. See *Miami Herald Publ'g Co. v. Chappell*, 403 So. 2d 1342 (Fla. Dist. Ct. App. 1981) (emphasizing that pretrial competency hearing could not be closed solely on basis that mental health statutes generally call for confidentiality of medical records and clinical treatment information.)

Historically, the commitment to a mental institution has been a public function, attended to over the years by the selectmen of a town, the "supervisors of the insane," the probate court or juries. These

were public procedures, of public interest. There was nothing confidential about them.

As early as 1882, no one could be committed to the insane asylum without the certificate of two physicians of "unquestioned integrity and skill" attesting to such person's insanity.[3] Friends or relatives of a person so committed could appeal the commitment to the "supervisors of the insane," who then held an examination in the town where the appellant resided. There was no provision for confidentiality attached to these procedures. See 1882, No. 48. *In re Allen,* which the district court cited in support of its conclusion that commitment hearings were conducted privately, in fact merely emphasizes the private nature of the physician's examination and certificates of insanity. 82 Vt. 365, 376, 73 A. 1078, 1082 (1909). The *Allen* Court concluded that, because such examinations were not of a public nature nor made to inform the public of what the court held to be a matter of public interest, see *id.*, they could not be used as a substitute for a trial of the issues before the court. See *id.* at 376-78, 73 A. at 1082-83.

Under the 1933 Public Laws of Vermont, the selectmen were to petition the probate court when an insane person in town was liable to be supported by the state. The court would hold a hearing, and, upon evidence satisfactory to the judge that such person was insane and dangerous, the court could "order the removal of such person to the Vermont state hospital for the insane at Waterbury." 1933 P.L. § 3982. Again, there was no provision for confidentiality. An appeal from the probate court decision could be taken to the county court, and a jury trial could be had. See 1933 P.L. § 3986. By 1947 the Public Laws had added a jury appeal at the probate court level. See 1947 V.S. § 6639. If the jury found the person insane, the court certified the verdict, and the person was committed. See *id.* § 6641. From this verdict, appeal could still be taken to the county court. See *id.* § 6642. None of these statutorily mandated procedures were designated as confidential.

As the confidentiality provision of our contemporary juvenile law demonstrates, the Legislature knows how to create a confidential, closed hearing when it so desires.

> [T]he general public shall be excluded from hearings under
> this chapter and only the parties, their counsel, witnesses

---

[3] In 1906, a law was enacted that provided for imprisonment for two years and fines of not more than one thousand dollars for any physician not making a "careful" examination prior to certifying that a person was insane. See 1906, No. 106, § 1.

and other persons accompanying a party for his assistance and such other persons as the court finds to have a proper interest in the case or in the work of the court, may be admitted by the court.

33 V.S.A. § 5523(c). This section requires that juvenile court proceedings be kept confidential. See *In re J.S.*, 140 Vt. 458, 438 A.2d 1125 (1981). It further states, "[t]here shall be no publicity given by any person to any proceedings under the authority of this chapter except with the consent of the child and his parent or guardian." 33 V.S.A. § 5523(d). Provisions of this section "are clear and unambiguous. The Legislature did not intend that either the news media or the general public should attend juvenile hearings or report what transpired there." *In re J.S.*, 140 Vt. at 470, 438 A.2d at 1130. Note, however, that even in juvenile cases the legislative cloak of confidentiality may not shield all details of the matter from the public eye. Where a juvenile initially faces criminal charges in district court, a motion to transfer the case to juvenile court is open to the public. See *In re R.D.*, 154 Vt. 173, 178-79, 574 A.2d 160, 163 (1990); *In re K.F.*, 151 Vt. 211, 559 A.2d 663 passim (1989). That is, the confidentiality afforded to juveniles pursuant to chapter 55 of Title 33 attaches only after a case is transferred out of the district court.

Given the historical development of the commitment procedures and the lack of an express presumption of confidentiality in the current statute, we cannot find, as the district court did, that the Legislature has made a similar explicit effort to preserve the confidentiality of hospitalization hearings.

Further, as we have noted, "[t]he Title 13 procedure closely parallels but is not identical to the involuntary civil commitment procedure contained in Title 18." *State v. Condrick*, 144 Vt. 362, 364, 477 A.2d 632, 634 (1984). For example, the Legislature emphasized the criminal aspects of the Title 13 commitment by involving the prosecuting attorney in any decision of the court to discharge a defendant from the custody of the commissioner of mental health, presumably because there are public safety issues to be considered. See 13 V.S.A. § 4822.[4] The mere adoption of the civil commitment

---

[4]This has been the case for at least the last 116 years. See 1882, No. 49 (requiring notice to state's attorney and hearing in court issuing commitment order when court was to release persons who were confined in insane asylum due to acquittal or failure to indict because of insanity).

"procedures" for the conduct of hearings pursuant to Title 13 is not sufficient to deduce, as defendant suggests, that the Legislature intended to distance hospitalization hearings from the criminal context and create a presumption of confidentiality.[5]

Finally, the court erred in concluding that in a hospitalization hearing the court's exclusive concern is the welfare of the mentally ill defendant. It is not. The mental health statutes are equally concerned with the danger to the public posed by a person suffering from mental illness. In the case of a mentally ill defendant, with serious criminal charges pending against him and who has allegedly violated the conditions of the nonhospitalization order under which he was released into the community, the public interest is profound. "Justice must not only be done; it must be perceived as being done." *Westchester Rockland Newspapers, Inc. v. Leggett*, 399 N.E.2d 518, 522 (N.Y. 1979) (ruling that, absent particularized showing and findings establishing likelihood of harm to some other compelling interest, pretrial competency hearing in criminal case is presumptively open).

We read § 7615 as requiring the court to exercise its discretion by balancing the competing interests at stake — the public's interest in the restrictions placed on a mentally ill patient in the community and the defendant's right to privacy concerning his mental health status. Thus, the court erred when it permitted defendant to make the unfettered decision to stop the flow of information to the public concerning his mental condition, dangerousness, and custody status.

## II.

We next address whether 18 V.S.A. § 7103(a) provides a statutory presumption of confidentiality of the nonhospitalization order itself. Section 7103(a) states:

> All certificates, applications, records and reports, *other than an order of a court made for the purposes of this part of this title,* and directly or indirectly identifying a patient or former patient or an individual whose hospitalization or care has been sought under this part, together with clinical

---

[5]Whatever "distance" from criminal charges facing defendant that may be created by the outcome of the commitment hearing, charges pending in the district court are not affected by the commitment decision. See *State v. Clarke*, 145 Vt. 547, 550-51, 496 A.2d 164, 167 (1985).

information relating to such persons shall be kept confidential and shall not be disclosed by any person except insofar:

(1) as the individual identified or his legal guardian, if any (or, if he be a minor, his parent or legal guardian), shall consent in writing; or

(2) as disclosure may be necessary to carry out any of the provisions of this part; or

(3) as a court may direct upon its determination that disclosure is necessary for the conduct of proceedings before it and that failure to make disclosure would be contrary to the public interest.

18 V.S.A. § 7103(a) (emphasis added). Defendant's argument that § 7103 requires all issues addressed in a hospitalization hearing to be kept confidential fails because the section itself specifically exempts court orders from its confidentiality provisions. The court does have the discretion to redact from an order of hospitalization or nonhospitalization terms or conditions that disclose confidential, clinical information. We caution, however, against a trial court redacting information necessary for the public to maintain its confidence in the judicial system, particularly given the often significant interrelationship between court records of a pending criminal proceeding and a civil commitment hearing on the same matter. See *In re Billy Jo W.*, 514 N.W.2d 707, 715 (Wis. 1994) (construing statute making civil commitment court records confidential except by order of court, and identifying circumstances in which court may release them). Further, pursuant to subsection (a)(3) of the statute, the court may make any clinical records or reports public if the court determines that failure to make disclosure would be contrary to the public interest.

*Reversed and remanded for further proceedings in accord with our holding herein; the order of nonhospitalization shall be unsealed and made a part of the public record.*[6]

---

[6] For the reasons stated in our decision in *State v. Tallman*, 148 Vt. 465, 468-69, 537 A.2d 422, 424 (1987), we do not treat the issues raised in the appeal as moot.