2008 VT 133

# State of Vermont v. Ronald Beaudoin

[970 A.2d 39]

No. 07-185

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 21, 2008

166

*Thomas Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Defendant Ronald Beaudoin appeals from his convictions, after a jury trial, for two counts of lewd or lascivious conduct with a child, 13 V.S.A. § 2602. Defendant received concurrent sentences of twenty-five years to life, all suspended except seven years.[1] In this appeal, he contends that the trial court made numerous errors specific to competency. He also argues that the trial court erred in failing to instruct the jury to consider the lesser-included offense of engaging in lewdness, 13 V.S.A. § 2632(a)(8). We affirm.

___

[1] Defendant was also charged as a habitual offender. 13 V.S.A. § 11. After the jury reached a verdict on the two counts of lewd or lascivious conduct with a child, defendant waived his right to a jury trial on the habitual-offender charge. The district court found that the State had proven beyond a reasonable doubt that defendant was convicted of three felonies prior to February 2005.

¶ 2. On February 12, 2005, defendant, while playing hide-and-seek with the eight-year-old complainant and her younger brother, touched complainant's vagina underneath her clothing. Complainant was taken to the police station where she told investigators that defendant had touched her vagina that day and also touched her vagina over her clothing on a previous occasion. Defendant was arrested and charged with two counts of lewd or lascivious conduct with a child, 13 V.S.A. § 2602.

## I. Competency

¶ 3. Defendant asserts numerous claims of error specific to competency. Defendant argues that the court (1) erred in finding defendant competent to stand trial; (2) erred in failing to conduct a second competency evaluation during pretrial proceedings; and (3) failed to follow the court's own recommendations for ensuring defendant received a fair trial. We will take each issue in turn.

¶ 4. Between defendant's arraignment in February 2005 and his trial in October 2006, competency was discussed multiple times. The issue first arose at a status conference on April 12, 2005, when the court inquired about why the thirty-seven-year-old defendant had a guardian who was present in court, and defense counsel requested a competency evaluation. Dr. Jonathan Weker, a forensic psychiatrist who had conducted approximately 1,000 competency evaluations, performed the evaluation and submitted a report dated May 26, 2005, concluding that defendant was competent to stand trial. Disputing Dr. Weker's conclusion, defendant moved for a competency hearing.

¶ 5. At the contested competency hearing, Dr. Weker testified that he based his opinion on the fact that defendant was aware of the charges against him, he was aware of who his attorney was and of their relationship, and he was aware that trial is fundamentally an adversarial process.

¶ 6. After the first day of testimony, the parties discovered that defendant had been evaluated for competency to stand trial on three prior occasions. The hearing was rescheduled to allow Dr. Weker to review the previous evaluations. When the hearing resumed, Dr. Weker testified that defendant has a sense of the basic paradigm of a trial involving two adversarial parties and a neutral fact-finder, is capable of understanding how evidence and witness testimony might be presented, has an understanding of the concept of guilt, and has some understanding of a plea

bargain. Dr. Weker indicated that although defendant may not remember or understand certain points or statements during trial, this fact "doesn't exclude or preclude competency." He indicated that defendant's failure to understand certain points made during the course of a trial "suggests a need for accommodation to it." Dr. Weker's recommended accommodations included using simple vocabulary and grammar, explaining technical legal terms, allowing time for defendant's attorney to ascertain at frequent intervals that defendant comprehended what transpired, or appointing a facilitator to ensure that defendant understood the proceedings.

¶ 7. The district court also heard testimony from defendant's expert, Dr. Patricia Stone, a clinical psychologist. The court found that Dr. Stone had performed approximately fifteen to twenty competency evaluations.[2] Dr. Stone is not a forensic psychiatrist. Dr. Stone's opinion was based on her interview with defendant, tests conducted with defendant, as well as reviewing Dr. Weker's competency report and defendant's three prior competency evaluations. Dr. Stone concluded that "because of his mental retardation and severe problems with language problem solving . . . he would be incompetent because he would not have rational understanding."

¶ 8. Defendant first claims that the trial court erred in finding him competent to stand trial. We will not overturn the trial court's competency determination if it is supported by findings and if the findings are supported by credible evidence and are not clearly erroneous. *State v. Tribble*, 2005 VT 132, ¶ 10, 179 Vt. 235, 892 A.2d 232. To be competent to stand trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and [must have] a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); accord *State v. Bean*, 171 Vt. 290, 294, 762 A.2d 1259, 1262 (2000). Trying an incompetent defendant deprives him of his due process right to a fair trial. *Pate v. Robinson*, 383 U.S. 375, 385 (1966).

---

[2] As defendant points out, the court's finding that Dr. Stone performed fifteen to twenty competency evaluations is not supported by the testimony. The transcript from the competency hearing reveals that Dr. Stone had testified to matters of competency fifteen to twenty times in the last three years. This relatively minor error does not convince us to disturb the trial court's discretionary decision to credit one expert over another.

¶ 9. In making its finding and conclusions, the court listened to three days of testimony. In addition, the trial court engaged in a colloquy with defendant, reviewed the three prior competency evaluations from 1991, 1994, and 2001, and reviewed the reports of Drs. Weker and Stone. The court found that Dr. Stone's opinion and conclusion were based on a series of psychological tests she administered to defendant. The court noted that Dr. Stone's summary of her inquiry into competency issues was limited to a single paragraph of her report.

¶ 10. The court found that Dr. Weker's opinion and conclusion were based on an interview with defendant and a review of the State's information and affidavit. Dr. Weker's conclusion was that defendant was competent and noted in support that defendant was able to give a detailed account of the incident in question to Detective Duffy, including a denial of any wrongdoing and a refusal to answer any more questions until he spoke to a lawyer. Dr. Weker found that defendant was able to speak of the charges against him and the court proceeding.

¶ 11. Based on the extensive testimony and evidence presented during the competency hearing, and on Dr. Weker's interview with defendant and resulting competency evaluation, the court found that:

> [defendant] was able to inform Dr. Weker of the charges against him and their relative severity. He knew that his case was being heard in the Chittenden Court. He was able to identify his attorney and where she worked. He believe[d] that his attorney was trying to do a good job for him. She had informed him that the state wanted a 5 to 20 year sentence. He had no disagreements with his attorney and if one arose he believed that he could speak up to her.
>
> [Defendant] was able to describe the basic function of a trial. He was able to distinguish between pleas of guilty and not guilty, and knew that he could plead the latter. He knew that his lawyer was trying to fight the case and that the prosecutor was advocating that he be punished. Dr. Weker then described the trial process for [defendant], returning to the subject several minutes later to see how well [defendant] had retained the information. [Defendant] was able to describe the process. He was also

aware of proper courtroom decorum and believed that he could conform appropriately. He was able to assess the likelihood of being found not guilty and the consequences for being found guilty (maximum life sentence) or not guilty (release). He knew he could receive less than the maximum sentence and was familiar with probation. He was unfamiliar with plea bargaining and with his right to appeal, but appeared to understand Dr. Weker's explanation.

¶ 12. The court concluded that Dr. Weker's opinion was persuasive as he had vast experience and focused his evaluation on the issues particularly pertinent to a competency determination. The court concluded that Dr. Weker's opinion was consistent with prior forensic psychiatric evaluations of defendant. In addition, the court concluded that defendant's extensive experience in the criminal court bolstered Dr. Weker's conclusion.

¶ 13. There is sufficient evidence in the record to support the court's findings, which in turn support its conclusion that defendant was competent to stand trial. As outlined above, Dr. Weker found that defendant knew the charges against him and their relative severity, he could describe the basic functions of a trial, he could distinguish between guilty and not guilty, he knew the role of his attorney and the prosecutor, and he appeared to understand the concept of plea bargaining and his right to appeal after Dr. Weker's explanation. The court noted that defendant had been found competent to stand trial in 2001 and 1994 and had extensive experience with the criminal court system. The court's competency determination was not clearly erroneous; therefore we affirm its determination. *Tribble*, 2005 VT 132, ¶ 10.

¶ 14. Second, defendant asserts that the trial court erred in failing to hold a second hearing on competency during pretrial motion hearings. This claim is made for the first time on appeal. While defense counsel repeatedly stated her objection to the competency determination, she at no time asked the court for a second hearing and never objected to the court's failure to conduct a second inquiry.[3] Therefore, the issue is not properly

---

[3] At a June 27, 2006 motion hearing, defense counsel stated, "Judge, before we begin, I just want to note for the record that I have a continuing objection to Defendant's competency. I understand Judge Pineles has made a finding that he's

preserved for appeal. See *State v. Stell*, 2007 VT 106, ¶ 10, 182 Vt. 368, 937 A.2d 649. Because the conviction of a mentally incompetent person is a violation of due process, *Robinson*, 383 U.S. at 378, however, we will review the issue for "plain error." V.R.Cr.P. 52(b). "Plain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Pelican*, 160 Vt. 536, 538, 632 A.2d 24, 26 (1993) (quotation omitted).

■ ¶ 15. We find that the trial court did not commit plain error in failing to convene a new competency hearing because counsel for the defendant did not state the existence of new evidence, nor did she advance any new evidence for the court to consider. The trial court has a duty to conduct a competency hearing if there is "reason to believe that [the defendant] may be incompetent to stand trial." 13 V.S.A. § 4817(b). "Once a defendant has been found competent, the trial court must be alert to changed circumstances that would indicate the need for a new determination of competency." *State v. Lockwood*, 160 Vt. 547, 554-55, 632 A.2d 655, 660 (1993) (citing *Drope v. Missouri*, 420 U.S. 162, 181 (1975)).

¶ 16. Here, the court had no indication of any changed circumstances that would warrant a new inquiry. Defense counsel repeatedly stated that defendant was not competent, but the statements were in the nature of a continuing objection to the earlier competency determination. At no point did defense counsel offer to make a showing that defendant's circumstances had changed in a way that would warrant a new competency determination.[4] Defense counsel's continued objection was based on defendant's static condition and not on new circumstances.

---

competent. My interactions with him lead me to the conclusion that he is not competent, does not understand sufficiently enough of the proceedings to — for it to reach a level of competency." Defense counsel's assertion that her interactions with defendant led her to conclude that he was not competent could arguably be interpreted as an indication of changed circumstances. Nevertheless, defense counsel never specifically framed the issue, never asked for a second hearing, and did not object to the court's failure to conduct a second hearing.

[4] At a status conference, defense counsel stated: "And I just want to make the Court aware that we do have the, in my opinion, a continuing problem with the defendant's competency in this case. . . . [t]here was a long, prolonged competency issue that was decided by Judge Pineles at the end of December, but the defendant does have an IQ of sixty-six and I can assure the Court that when we

¶ 17. The question of defendant's competency to stand trial focused on mental retardation, not mental illness. As defense counsel acknowledged, defendant's condition was unlikely to change.[5] We have previously held that a mentally retarded defendant was not entitled to a new competency hearing two years after the original determination despite defense counsel's assertions that she had trouble communicating with the defendant because she did not point to any changed circumstances and none were noted in the record. *Lockwood*, 160 Vt. at 555, 632 A.2d at 660. Here, similarly, there is no evidence in the record that defendant's condition had changed.

¶ 18. The record reveals two pretrial occasions in which, upon conferring with defendant about court proceedings, defense counsel reported to the court that in her opinion defendant did not sufficiently understand the issues. Certainly, defense counsel's representation concerning a client's competency is one factor to be considered in making a competency determination, *Drope*, 420 U.S. at 177 n.13, but it is not the only factor. In each of these instances, defense counsel did not provide the court with new information to warrant a second determination based on changed circumstances, nor did counsel explicitly request a new competency hearing.

¶ 19. At a March 13, 2006 motion hearing to admit hearsay testimony, defense counsel informed the court that she had tried

go to trial I will be raising this issue again." Other statements by counsel regarding competency were to the same effect: "I continue to object to the Defendant's competency. . . . I continue to object"; "There was a ruling by Judge Pineles that he's competent. . . . I continue to object to that ruling and assert that my client is incompetent"; "I have a standing objection to my client's competency"; "Lastly, Judge, I just want to reiterate I have a standing objection to the entire trial and proceeding on the grounds that Mr. Beaudoin is not competent, in my opinion. I will just say it once today, once tomorrow so that we don't interrupt the trial, but I have maintained that he's not competent from the beginning"; "[A]nd as you know, I have an objection to his competency."

[5] Defense counsel stated that, "[i]n Mr. Beaudoin's case, I don't think that there's been any significant change. His disabilities are a result of mental retardation and other conditions which are, my understanding . . . they're chronic and not subject to improvement with any kind of medical treatment." The following exchange with the court is to the same effect:

> Court: Well, this should be a pretty static situation. I mean, it's not like mental illness. If you're talking about IQ then.
>
> Defense: That's right.

explaining the purpose of the hearing and asked defendant to repeat back what was said. She reported that defendant could recall only one or two words. The fact that defendant could only repeat back one or two words of counsel's hearsay explanation was not a new representation. This had been defendant's position at the competency hearing. At no point did defense counsel inform the court that defendant's condition had changed, and the record does not indicate that it had. Counsel was simply renewing her objection to the previous competency determination.

¶ 20. During a June 27, 2006 hearing on the motion to suppress, defense counsel was given an opportunity to confer with defendant during a break in testimony. Counsel then reported to the court that in her opinion defendant did not have a comprehensive understanding of the testimony. She again reported that defendant had an IQ of sixty-six and developmental disabilities. She said that he could not retain and comprehend information and that "[t]his is consistent with my experience of him over the course of this case." Counsel did not assert that defendant's condition had changed or that her objection was based on a factor not previously addressed by the court. Defense counsel merely renewed her continuing objection to the court's original competency determination.

¶ 21. At the same motion hearing, defense counsel noted that defendant was "heavily medicated." Initially defense counsel simply wanted to note for the record that defendant appeared lethargic. After the court ordered a recess to determine what medications defendant was taking and their effects, defense counsel stated, "My client tells me he does feel sleepy this morning, but I don't see that this combination — the medical result of this combination of drugs — so my objection to his competency remains on the basis of his mental retardation in combination with his other disabilities." Defendant's contention that the trial court took no action is inaccurate. The court ordered a recess and asked the parties to determine what medications defendant was taking.[6] After speaking with the correctional facility's medical staff, the parties reported that there had been no change in defendant's condition.

¶ 22. Moreover, at no point *during* trial did defense counsel offer new evidence indicating a change in defendant's competency

---

[6] Even if a burden existed for the court to reevaluate competency, the court satisfied any such burden through its ordered recess and inquiry.

sufficient to require a second competency determination. At the start of trial, defense counsel reiterated that she had a standing objection to defendant's competency. In response to the objection, the trial court stated: "I didn't hear the competency hearing, so I'm relying on Judge Pineles's decision, but . . . based upon . . . the interview between the officer and — and Mr. Beaudoin, he seems to be competent to me. He knew — it seems to me he knew exactly what the officer was talking about and was — and responded appropriately." The trial court was satisfied that defendant was competent to stand trial and was therefore under no obligation to order further evaluation. See *State v. Welch*, 159 Vt. 272, 276-77, 617 A.2d 427, 430-31 (1992).

¶ 23. Defense counsel reiterated her standing objection on the second day of trial. Defense counsel was given frequent opportunities during the presentation of evidence to consult with defendant. At no point did counsel raise an objection after these breaks or inform the court that there was a change in circumstances. As noted, the record does not reveal any such change.

¶ 24. After the close of evidence, the parties discussed jury instructions. The court requested that defense counsel discuss a paragraph in the instructions making specific reference to defendant not testifying. Defense counsel reported that she showed the instruction to defendant but he couldn't understand what it meant. She reiterated her objection to defendant's competency. The court asked defendant "Is that paragraph okay with you if it's okay with your lawyer, Mr. Beaudoin?" Defendant responded affirmatively. There is nothing in this interaction that would trigger the court to make a second competency determination.

¶ 25. At no point during pretrial proceedings or during the trial did defense counsel argue that her client's condition had changed from when the pretrial competency determination was completed. Defense counsel maintained her disagreement with the court's competency determination throughout the entire proceedings, but did not suggest new evidence existed or present a new issue to the court that could trigger a new competency determination. Therefore, the court did not commit plain error in failing to conduct a second competency determination.

¶ 26. Third, defendant contends that the trial court failed to provide defendant with the recommended accommodations and that due to its failure, under the court's own competency deter-

mination, defendant was ultimately rendered incompetent. Again, defendant's claim of error is not properly preserved for appeal. At no point during trial did defendant object to a lack of accommodation. Defendant never requested any additional breaks or other accommodations during the trial. There is no record of defendant's objection to the court's alleged failure to use simple vocabulary and grammar or to explain any legal terms.

¶ 27. Nor did the trial court commit plain error in providing accommodations to defendant at trial. Defendant interprets the court's competency determination as being contingent upon the recommended accommodations. This interpretation is not supported by the record. A court may qualify its competency finding and suggest or mandate accommodations. *State v. Cleary*, 2003 VT 9, ¶ 12, 175 Vt. 142, 824 A.2d 509. Here, the court did not take the mandatory route. The court concluded that defendant was competent to stand trial, and agreed with Dr. Weker's recommendation that defendant receive accommodations. But that suggestion was aspirational. The court stated that defendant "should have accommodations to insure the utmost fairness." We are unable to read this language as a mandate.

¶ 28. Nevertheless, we find nothing in the record to suggest that the court did not provide defendant with the recommended accommodations. Prior to the start of the trial, the court queried defense counsel as to how the court should address the jury regarding its intent to take more frequent breaks than normal. The court noted that the jury was aware that the court typically took breaks about once an hour and if the court started taking breaks every half-hour, the jury would notice. Accordingly, the jury was instructed that breaks would be taken more frequently than normal in order to allow defendant to consult with his attorney. During trial, the court recessed frequently.

¶ 29. Therefore, the court did not err in concluding that defendant was competent to stand trial, or in declining to conduct a second competency hearing. The court's competency ruling was not contingent on the suggested accommodations, but it nevertheless provided those accommodations.

## II. Lesser-Included Offense

¶ 30. Finally, defendant takes issue with the trial court's refusal to instruct the jury on the lesser-included offense of engaging in

lewdness, 13 V.S.A. § 2632(a)(8). Prior to trial, defendant filed a request for proposed jury instructions, asking the court to instruct the jury on the lesser-included offense. Defendant argued that, given his diminished capacity defense, the jury should have the option of determining that he committed a prohibited lewd act, but without the specific intent of arousing either his or the putative victim's sexual desires, as required by § 2602(a)(1). Cf. *State v. Maunsell*, 170 Vt. 543, 544, 743 A.2d 580, 583 (1999) (mem.) (distinguishing 13 V.S.A. §§ 2601 and 2602 based on the specific intent element in § 2602). The State initially agreed to such an instruction, albeit with different language, but changed its position following the close of the State's evidence after hearing the trial court's explanation for why it did not intend to charge the lesser-included offense. Ultimately, the court concluded that engaging in the misdemeanor "prohibited act" of "lewdness" was not a lesser-included offense of felonious lewd or lascivious conduct with a child because the State was not required to prove that the lewd act was "open and gross" for the greater offense under § 2602, as it would have to prove for the lesser offense under § 2632(a)(8). Defendant timely objected to the court's ruling.

■■ ■ ¶ 31. The question of whether an offense is lesser-included is one of law. Our review is nondeferential and plenary. *State v. Koch*, 169 Vt. 109, 112, 730 A.2d 577, 580 (1999). The pertinent rule is V.R.Cr.P. 31(c): "The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." A criminal defendant is entitled to have the jury instructed on all lesser-included offenses. *State v. Delisle*, 162 Vt. 293, 301, 648 A.2d 632, 637 (1994). A lesser-included-offense instruction is required when the elements of a lesser offense must necessarily be included in the greater offense. *State v. Bolio*, 159 Vt. 250, 252, 617 A.2d 885, 886 (1992). The test is outlined in *State v. Forbes*, which states that "[a]n offense is a lesser-included offense of another if it is composed of some, but not all, elements of the greater offense and does not have any element not included in the greater offense." 147 Vt. 612, 616-17, 523 A.2d 1232, 1235 (1987) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

¶ 32. Here, defendant was charged with lewd or lascivious conduct with a child. 13 V.S.A. § 2602. The elements of that offense are that the . defendant (1) willfully and lewdly; (2)

committed any lewd or lascivious act; (3) upon or with the body of a child under the age of sixteen years; (4) with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child. *Id.* The elements of engaging in simple misdemeanor lewdness are that the defendant: (1) engaged in (2) lewdness. *Id.* § 2632(a)(8). For the latter offense, "lewdness" is specifically defined to mean lewdness that is "open and gross." *Id.* § 2631. The dispute centers around whether § 2632(a)(8) includes an element that the State need not prove under § 2602 — specifically, whether "any lewd" act under § 2602 need be open and gross, as required for "lewdness" under § 2632(a)(8).

¶ 33. Defendant argues that § 2631's definition of "lewdness" as "open and gross lewdness" applies to "any lewd or lascivious act" in § 2602 as well as to § 2632(a)(8), which prohibits "lewdness." According to defendant, the "open" element requires at least one witness, and lewd or lascivious conduct with a child is, by definition, "open," insofar as it necessarily involves a child witness. The State, on the other hand, contends that "open and gross" lewdness is omitted as an element of the offense of lewd or lascivious conduct with a child. The State points out that the Legislature specifically expressed an intent to punish the felony of "open and gross lewdness and lascivious behavior" under § 2601 and the misdemeanor "prohibited act" of lewdness under § 2632(a)(8) (defined as "open and gross" in § 2631), but did not so express that "any lewd or lascivious act" against a child be "open and gross" as a necessary element for prosecution under § 2602. According to the State, if the Legislature had intended the State to prove under § 2602 that a defendant's lewd acts against a child were open and gross, it would have expressly stated so, as it did in §§ 2601, 2631, and 2632(a)(8).

¶ 34. We agree with the State's position. The plain language of the statute prohibiting lewd conduct with a child criminalizes "*any* lewd or lascivious act." *Id.* § 2602 (emphasis added); see *State v. O'Dell*, 2007 VT 34, ¶ 7, 181 Vt. 475, 924 A.2d 87 (construing statutory language requires looking first at plain, ordinary meaning). The inclusion of the word "any" before the term "lewd or lascivious act" conveys that the Legislature did not intend to require that the State prove that the lewd act was open and gross. As the State argues, the Legislature certainly knew how to do that, and in fact did so with respect to other sections

criminalizing lewd behavior. See 13 V.S.A. §§ 2601, 2631. Indeed, the word "lewdness" in § 2632(a)(8), which defendant claims is a lesser-included offense, is explicitly defined in the preceding section "to mean open and gross lewdness." *Id.* § 2631. Because § 2632(a)(8) contains an element that is not contained in § 2602, § 2632(a)(8) cannot be a lesser-included offense of § 2602, as defendant claims.

■■■ ¶ 35. The organization of chapter 59 further supports this conclusion and leads us to reject defendant's contention that the definition of lewdness in § 2631 also applies to § 2602. See *State v. Wright*, 154 Vt. 512, 527, 581 A.2d 720, 729 (1989) (construing statutory language requires looking at "the whole statute"). Chapter 59 of Title 13 addresses "Lewdness and Prostitution," with subchapter one dedicated to "Lewd and Indecent Conduct" and subchapter two dedicated to "Prostitution." Subchapter 1 includes §§ 2601 and 2602 and a section on voyeurism, 13 V.S.A. § 2605. Section 2601 makes it a felony to engage in "open and gross lewdness," while § 2602 makes it a felony to commit "any lewd or lascivious act" on a child. Subchapter 2 prohibits prostitution, lewdness, or assignation, *id.* § 2632, and also prohibits slave traffic, unlawful procurement, and appropriating or levying upon the earnings of a prostitute, *id.* §§ 2635-2637. As noted, the definition section at the beginning of subchapter 2 defines "lewdness" as "open and gross lewdness." *Id.* § 2631.

■■■ ¶ 36. We conclude that the definition in § 2631 applies only to the sections contained in subchapter 2. If the definition applied to subchapter 1, the Legislature's requirement of "open and gross" lewdness in § 2601 would be entirely superfluous. See *State v. Carroll*, 2003 VT 57, ¶ 7, 175 Vt. 571, 830 A.2d 89 (mem.) (stating that statutory language is presumed to be "inserted advisedly and not intended to create surplusage"). In numerous Title 13 chapters, the Legislature has expressly provided that the definitions apply throughout an entire chapter, see, e.g., 13 V.S.A. §§ 351, 1021, 1603, 2404, 2573, 2821 & 3251, but the Legislature did not do so in § 2631. We recognize that some Title 13 chapters explicitly state that their definitions apply *only* to the particular subchapter in which they are found, see, e.g., 13 V.S.A. §§ 1041, 1901, 2581 & 3431, but we are not convinced that the absence of an explicit statement limiting § 2631 to subchapter 2 indicates that the Legislature intended the section to apply to all of chapter 59.

All other signs are to the contrary. The three words defined in § 2631 — "prostitution," "lewdness," and "assignation" — are found repeatedly in § 2632. Section 2631's placement preceding § 2632 comports with the notion that § 2631's definitions are intended to be restricted to the subsequent sections in the subchapter and not to the preceding sections in a different subchapter. The fact that the terms "prostitution" and "assignation" are not found in subchapter 1 further buttresses this conclusion.

¶ 37. Moreover, it is entirely rational for the Legislature to require proof of open and gross conduct when generally criminalizing lewd behavior, but not to require such proof when criminalizing sexually motivated conduct against children. The general proscription against lewd behavior is "aimed at conduct which, by its openness and notoriety, tends to affront the public conscience and debase the community morality." *Everett v. Commonwealth*, 200 S.E.2d 564, 566 (Va. 1973). Conduct is open when it is neither disguised nor concealed and is witnessed by at least one person. *State v. Benoit*, 158 Vt. 359, 361, 609 A.2d 230, 231 (1992). Conduct between consenting adults that would be subject to prosecution under § 2601 or §.2632(a)(8) when done openly would not necessarily be subject to a charge of lewdness when done in private. See *Everett*, 200 S.E.2d at 566.

¶ 38. In contrast, the plain language of § 2602 indicates that the statute is aimed at preventing the sexual exploitation of children, irrespective of whether that exploitation is done openly or secretly. Indeed, to hold otherwise would create absurd results, such as allowing the sexual exploitation of children who "consented" to the offensive conduct or who were asleep or unconscious when the offense occurred. Cf. *State v. Penn*, 2003 VT 110, ¶ 13, 176 Vt. 565, 845 A.2d 313 (mem.) (upholding denial of judgment of acquittal on charge under § 2601, where defendant committed lewd act upon unconscious woman in full view of woman's daughter); *Benoit*, 158 Vt. at 361, 609 A.2d at 231 (upholding conviction under § 2601, where witness observed naked body of sleeping child whom defendant had undressed). Plainly, this is not what the Legislature intended.

¶ 39. In sum, the State is not required to prove that a lewd or lascivious act was "open and gross" to convict under § 2602. In contrast, § 2632(a)(8) requires proof of open and gross lewdness.

Therefore, engaging in lewdness, as proscribed by § 2632(a)(8), is not a lesser-included offense of lewd or lascivious conduct with a child, as proscribed by § 2602.

*Affirmed.*

¶ 40. **Johnson, J.,** dissenting. I cannot agree with the majority that the district court acted within its discretion in concluding that a mentally retarded defendant with the cognitive facilities of a young child was competent to stand trial. The evidence before the court at the competency hearing plainly demonstrated that defendant's severely limited memory and abstract-reasoning functions would most likely prevent him from following the proceedings, consulting with his attorney, or otherwise engaging in a defense against the charges. Indeed, defendant's inability to participate in his defense became apparent in the ensuing proceedings, as evidenced by both his attorney's and the district court's fruitless efforts to inform of him of what was taking place. In my view, the court ignored defendant's cognitive limitations, which were made apparent by the undisputed testimony of defendant's expert, the concessions of the State's expert, the court's own colloquy with defendant, and defense counsel's ongoing unsuccessful efforts to communicate effectively with defendant concerning a defense against the charges. Instead, the court relied almost exclusively on the opinion of a prosecution expert who focused primarily on mental illness rather than mental retardation. This was an abuse of discretion.

¶ 41. A detailed review of the record is necessary to demonstrate the district court's abuse of discretion in this case. At the competence hearing held late in 2005, the State's expert, forensic psychiatrist Dr. Jonathan Weker, concluded, based on an interview with defendant lasting between two and one-half and three hours, that although defendant "clearly . . . presented with limited intellect," he was aware of the severity of the charges against him, had a rational working relationship with his attorney, and understood the adversarial nature of a criminal trial. Dr. Weker also testified that, given defendant's intellectual limitations, it would be important during the criminal proceedings to use basic vocabulary and to provide an opportunity for either defendant's attorney or a cognitive facilitator to check in with defendant on a regular basis to make sure that he was following the proceedings.

¶ 42. When asked during direct examination why he had not administered any formal psychological tests in evaluating defend-

ant's competence to stand trial, Dr. Weker responded first that he "was not trained to administer tests of that nature," and second that "psychological testing can be useful, but in and of itself, [is] not determinative." During cross-examination, Dr. Weker stated that mental retardation could be a basis for incompetence

> if the Defendant seemed completely incapable of understanding what a trial is, for instance, if he or she couldn't understand that it was a process for determining guilt or innocence with respect to a charge, if they were incapable of understanding that it was an adversarial process with . . . a neutral fact finder, if they were incapable of . . . remembering or being reminded of what the events were that they were being charged for and if they were completely incapable of being . . . educable, if you will, about the things that they may not know.

When pressed about whether defendant would be able to keep up with the testimony and participate in his defense at trial, Dr. Weker explained that the accommodations he recommended should allow defendant to do so.

¶ 43. Defendant's expert, clinical psychologist Dr. Patricia Stone, conducted six psychological tests examining defendant's cognitive abilities. The tests indicated that defendant's IQ fell in the first percentile of the population, and that he was able to complete various cognitive tasks somewhere on the level of a child between the ages of four and eleven, depending on the task. Based on these tests and other information, Dr. Stone opined that defendant's mental retardation, coupled with his severe cognitive, language, and memory limitations, made him incompetent to stand trial. According to Dr. Stone, given his severely impaired memory and his inability to engage in abstract reasoning, defendant would not be able to process information fast enough at trial to aid his attorney in his defense, even with the accommodations recommended by Dr. Weker. Dr. Stone also stated that defendant would most likely indicate to his attorney or cognitive facilitator that he understood what was going on when in fact he did not understand.

¶ 44. Following Dr. Stone's testimony, Dr. Weker conceded during cross-examination that defendant would probably not do well at spontaneously initiating a dialogue with his attorney in the event he did not understand what was happening at trial. Al-

though Dr. Weker thought that defendant would be able to do so if prompted on a regular basis, he acknowledged the possibility that defendant would not realize he had missed something and thus might indicate that he understood everything when in fact he had not. Dr. Weker also acknowledged that defendant (1) might not be able to respond when asked about a witness's testimony because of his lack of ability to retain information; (2) would not be able to sustain his attention for a full day of trial without hourly breaks; (3) would have an even reduced attention span and memory capacity during the stress of a trial; (4) would not be able to understand some of the arguments that the State would make against him; and (5) to some degree, would not be able to testify on his own behalf because of his limited understanding of abstract concepts and his problems with memory and focus. In sum, Dr. Weker agreed with Dr. Stone that defendant's deficient verbal and abstract reasoning skills "could interfere with his ability to understand and function competently within the legal system."

¶ 45. Following Dr. Weker's testimony, the district court engaged defendant in a colloquy, presumably to assess his competence to stand trial. After defendant described his relationship with his attorney as "a friendship," the colloquy went as follows:

Q: Do you know if the charges against you are serious or not serious?

A: Not serious.

Q: Excuse me?

A: Not serious.

Q: Okay. Do you know what habitual offender is?

A: No.

Q: Do you know what the Judge does?

A: Find out if the person is guilty or not guilty.

Q: Do you know what a jury is?

A: Where people have a decision to make to see who — if they're not guilty or guilty.

Q: Do you know what a jury trial is?

A: What's that, sir?

Q: A jury trial?

A: No, I don't.

Q: Have you ever had a jury trial?

A: No, sir.

Q: Have you ever been in adult court before on other charges?

A: I'm not sure if I have.

Q: Okay, now you spent some time in jail; is that right?

A: Yes.

Q: And do you recall what that was for?

A: I've been in like for five years.

Q: Hm-hmm.

A: Maxed out last year.

Q: Mr. Beaudoin, do you know what it means to plead guilty?

A: If you find a person if he's guilty or not.

Q: Mr. Beaudoin, do you understand that a child said that you touched her, that you touched her private parts?

A: I don't remember, recall that, sir.

Q: You don't recall that?

A: No, I was drinking that night —

Q: But I don't want you to tell me what you remember from that particular occasion, but do you know that's why you're in court?

A: Yeah.

Q: You understand that a little girl said that you touched her in her private parts?

A: I don't remember that.

Q: You don't remember what?

A: What happened.

Q: What happened. Okay. Let's see — we'll consider the evidence closed.

¶ 46. This colloquy, together with Dr. Weker's testimony and written report, apparently convinced the district court that defendant was competent to stand trial, as indicated in the court's written decision filed three days following the completion of the competence hearing. After recounting defendant's criminal history and his previous competence evaluations, the court noted that, despite defendant's limited intelligence, there was no evidence that he had grossly distorted thinking or was not oriented to person, place, and time. The court further noted that defendant was aware of the charges against him, the function of a trial, and the potential penalties for the crime charged. The court then indicated that it was persuaded by Dr. Weker's opinion, stating that defendant's experience in the criminal court system bolstered its conclusion. The court explained in the two paragraphs dedicated to its conclusions of law that Dr. Weker had vast experience, had focused his evaluation specifically on the issue of competence, and had concurred with the more recent prior competence evaluations of defendant. The court, however, acknowledged defendant's significant mental deficiencies and thus agreed with Dr. Weker's assessment that defendant "should have accommodations to insure the utmost fairness."

¶ 47. This assessment cannot withstand scrutiny, notwithstanding the discretion that the district court is afforded in making competence determinations. See *State v. Tribble*, 2005 VT 132, ¶ 10, 179 Vt. 235, 892 A.2d 232 (noting that competence determination will not be overturned "if it is supported by the court's findings, and if the findings in turn are supported by credible evidence and are not clearly erroneous"). The evidence at the competence hearing did not, and could not, support a conclusion that defendant had " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' " of the proceedings against him. *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). On the contrary, the evidence demonstrated that defendant's extremely limited cognitive faculties and memory functions would significantly impair his ability to follow the criminal proceedings and confer with his attorney concerning his defense.

¶ 48. On the one hand, Dr. Stone presented the results of six tests establishing the cognitive limitations that would prevent

defendant from meeting the above competence standard. On the other hand, Dr. Weker relied on his experience and based his competence evaluation on a single, limited conversation with defendant. Dr. Weker's report appears to give significant weight to defendant's lack of distorted thinking and his orientation to time and place, even though defendant is a person with mental retardation, not a mental illness. During his testimony, Dr. Weker also suggested that a mentally retarded individual would be incompetent to stand trial only if he were completely incapable of understanding the adversary process in a criminal trial. That is not the standard for incompetence to stand trial. Rather, the standard is whether the defendant has a rational and factual understanding of the proceedings against him and can reasonably and rationally consult with his attorney concerning his defense. *Drope v. Missouri*, 420 U.S. 162, 172 (1975). Notwithstanding his conclusion that defendant was competent to stand trial, Dr. Weker himself conceded during cross-examination that defendant might not be able to follow court proceedings, understand arguments against him, testify on his own behalf, confer with his attorney about prior testimony due to his limited memory, or apprise his attorney of his inability to understand what was going on. This is not a competent defendant under the accepted standard.

¶ 49. In its brief conclusions regarding defendant's competence, the district court merely recited Dr. Weker's opinion and stated that it found the opinion persuasive because it was consistent with recent prior competence evaluations of defendant. The court paid little heed to Dr. Stone's conclusions or opinion, stating only that accommodations to defendant would ensure a fair trial. Nor did the court mention its colloquy with defendant, which plainly confirmed expert testimony recognizing defendant's limited cognitive abilities, including his limited capacity to retain information or reason abstractly. See *United States v. Quintieri*, 306 F.3d 1217, 1233 (2d Cir. 2002) (noting that the "district court's own observations of the defendant's demeanor during the proceedings are relevant to the court's [competence] determination"). Indeed, the colloquy unequivocally demonstrated defendant's severely limited understanding of the proceedings against him. In my view, given the state of the evidence presented to the court at this juncture, the court abused its discretion by finding defendant competent to stand trial.

¶ 50. But even if the evidence were such that the district court could defer its competence determination until it had the oppor-

tunity to observe defendant interact with his attorney, defendant's subsequent conduct and the assertions of defense counsel at pretrial proceedings amply demonstrated that the concerns expressed at the competence hearing were well-founded and that defendant was in fact incapable of consulting with his attorney and participating in his defense. At the outset of the March 2006 motion hearing in which the victim's relatives and an investigating police officer testified concerning what the victim had told them about the alleged assault, defendant's attorney expressed her continued belief that defendant was incompetent to stand trial. She stated that despite her persistent efforts to explain to defendant the purpose of that day's hearing, he did not understand what was going on and he was unable to comprehend potential defense strategies and possible outcomes in the case. Nevertheless, the court (a different judge from the one who presided over the competence hearing) allowed the testimony after confirming that defendant knew who the witnesses were and then informing defendant that the witnesses were going to tell the court what the victim told them he had done to her.

¶ 51. Not far into the first witness's testimony, defense counsel asked the court to allow her to confer with her client to make sure that he had understood the testimony. Following the conference, defense counsel reported that defendant could not keep up with the testimony and was unable to tell her what he had just heard. At that point, the court addressed defendant directly in an effort to explain in simple terms what the witness's testimony had been. During the ensuing colloquy, defense counsel's explicit concern that defendant might make damaging admissions became a reality when, shortly after the court began relaying the witness's testimony to him, he blurted out, · "Yeah, that's what happened." The court assured defense counsel that "nothing will be used against him," but defendant's eagerness to agree with the judge was apparent. The court then went into a lengthy summary of the testimony that the witness had provided.

¶ 52. For the remainder of the hearing, defense counsel periodically reported that defendant was not following the proceedings, and the court periodically summarized the previous testimony for defendant. At one point, defendant responded in the negative when the court asked if he had any questions regarding its summary of the testimony, but defendant's attorney reported, based on her conference with defendant, that he did not appear to

understand what had been related to him concerning that testimony. At another point, when defense counsel reported that defendant had told her that he did not understand the "big words," the court merely acknowledged the comment and proceeded with the testimony. When counsel explained that defendant might be telling the court that he understood when in fact he did not, the court acknowledged that possibility, but stated that it wanted to create "a record of a simple, slow story being presented."

¶ 53. There was more of the same at a June 2006 evidentiary hearing on defendant's motion to suppress statements defendant had made to police. Once again, at the outset of the hearing, defense counsel informed the court that her interactions with defendant had led her to conclude that he was incapable of understanding what was going on in the proceedings or helping her with his defense, irrespective of the accommodations recommended by the State's expert and the previous judge. During the hearing, at which an investigating officer testified, defense counsel informed the court that defendant did not understand the testimony and thus could not consult with her about the testimony. Defense counsel further explained that when she asked defendant whether he understood, he would say yes, but was unable to repeat the testimony in any meaningful way, which confirmed the experts' previous concerns regarding passive acquiescence. When defense counsel stated that she did not see the point in having any more conferences with a defendant who obviously did not understand what was going on, the court merely stated that it would continue to give her the opportunity to confer periodically with defendant.

¶ 54. During the jury draw and trial, at which a third judge presided, defense counsel again renewed her objection to the original competence ruling, stating that, with or without accommodations such as allowing her or a cognitive facilitator to consult periodically with defendant, defendant was simply incapable of participating in the trial and his defense. The court acknowledged the objection and proceeded with the trial. The court stated that it was relying on the decision of the judge who had presided over the competence hearing, and that it had also listened to the audiotape of defendant's interview with the police, which seemed to indicate that he was competent then.

¶ 55. Even assuming that the district court did not abuse its discretion by finding defendant competent following the compe-

tence hearing, I would hold that, in light of what transpired at the proceedings between the competence hearing and trial, the district court was obligated to reevaluate defendant's competence. There was no suggestion of malingering on defendant's part, and yet the judges at the pretrial and trial proceedings accepted unquestioningly the initial competency ruling rather than probe defense counsel's legitimate concerns regarding defendant's inability to understand the proceedings and participate in his defense. Cf. *State v. Thompson*, 167 Vt. 383, 387, 708 A.2d 192, 194 (1998) (stating that it was imperative for the court at a plea hearing to assure itself that defendant understood what rights he was waiving, in light of "defense counsel's continuing difficulty in communicating with his client, and the close question over whether defendant was competent to stand trial").

¶ 56. The majority states that there were no changed circumstances from the competence hearing to trial in terms of defendant's competence, but the changed circumstance was the apparent inability of defendant to consult with his attorney and participate in his defense. Defendant's level of competence undoubtedly did not change, but the transparency of his level of incompetence and its impact on his ability to participate in his defense did. In any event, as I stated in a previous dissent, the salient issue is not whether there are changed circumstances, but rather whether the facts in front of the trial court at any given time during the criminal proceedings are sufficient to cast doubt on defendant's competence to stand trial. See *State v. Lockwood*, 160 Vt. 547, 575, 632 A.2d 655, 671 (1993) (Johnson, J., dissenting) (stating that trial court was obligated to revisit previous competence determination after defense counsel "had expressed her inability to work with defendant in formulating a defense because of his cognitive deficiencies").

¶ 57. Plainly, the trial court gave little weight to the explicit concerns raised by defense counsel and confirmed by defendant's actions. This was an abuse of discretion under the circumstances. Because the "ability of defendants to consult and interact appropriately with their defense attorneys lies at the heart of the incompetency standard," the defendant's attorney "may well be the single most important witness on that dimension of incompetency." Am. Bar Ass'n Standards for Criminal Justice § 7-4.8 cmt. at 7-211 (2d ed. 1986 supp.); see *United States ex rel. Roth v. Zelker*, 455 F.2d 1105, 1108 (2d Cir. 1972) ("The opinion of a

defendant's attorney as to his [client's] ability to understand the nature of the proceedings and to cooperate in the preparation of his defense, is indeed significant and probative."). In this case, the trial court essentially ignored mounting evidence, including statements from defendant's attorney, that previous concerns raised by experts about defendant's potential inability to consult with his attorney and participate in his defense were well-founded.

¶ 58. In short, the evidence at the initial competence hearing demonstrated that defendant was incompetent to stand trial, and defendant's lack of competence became even more apparent during the ensuing criminal proceedings. Therefore, while I agree with the majority that the lewdness proscribed by 13 V.S.A. § 2632(a)(8) is not a lesser-included offense of lewd or lascivious conduct with a child proscribed by 13 V.S.A. § 2602, I would not reach that issue because I would reverse the trial court's competence determination.

¶ 59. I am authorized to state that Justice Skoglund joins this dissent.